CALABRIA, Judge.
*664 Torrey Grady ("defendant") appeals from the trial court's order determining that satellite-based monitoring ("SBM") of defendant is a *665 reasonable search under the Fourth Amendment. After careful review, we conclude that the State failed to prove the reasonableness of imposing SBM for defendant's lifetime. Accordingly, we reverse. *21 I. Factual and Procedural Background
In 1997, defendant pleaded no contest to a second-degree sex offense, and in 2006, he pleaded guilty to taking indecent liberties with a child. The trial court never made an SBM determination at either of defendant's sentencing hearings for these offenses. However, on 14 May 2013, the trial court held an SBM "bring-back" hearing pursuant to N.C. Gen. Stat. § 14-208.40B (2017). The court found that defendant's convictions were both "sexually violent offenses" pursuant to N.C. Gen. Stat. § 14-208.6(5), and therefore, defendant met the criteria of a "recidivist" under N.C. Gen. Stat. § 14-208.6(2b). Accordingly, the trial court ordered defendant to enroll in SBM for the remainder of his natural life, as required by N.C. Gen. Stat. § 14-208.40B(c).
Defendant appealed that order to this Court, arguing that SBM violated his right to freedom from unreasonable searches and seizures, as provided by the Fourth Amendment to the United States Constitution. In an unpublished decision filed 6 May 2014, we affirmed the trial court's order, concluding that we were bound by our Court's rejection of a nearly identical argument in State v. Jones , 231 N.C. App. 123, 750 S.E.2d 883 (2013). State v. Grady , 233 N.C. App. 788, 759 S.E.2d 712 (2014) (unpublished). After our Supreme Court dismissed defendant's appeal and denied discretionary review, State v. Grady , 367 N.C. 523, 762 S.E.2d 460 (2014), the United States Supreme Court granted defendant's petition for writ of certiorari.
The United States Supreme Court held that despite its civil nature, North Carolina's SBM program "effects a Fourth Amendment search." Grady v. North Carolina , 575 U.S. ----, ----, 135 S.Ct. 1368, 1371, 191 L.Ed.2d 459, 462 (2015) (per curiam). However, since "[t]he Fourth Amendment prohibits only unreasonable searches[,]" the Supreme Court remanded the case for North Carolina courts to "examine whether the State's monitoring program is reasonable-when properly viewed as a search ...." Id . at ----, 135 S.Ct. at 1371, 191 L.Ed.2d at 463.
On 16 June 2016, the trial court held a remand hearing on the reasonableness of defendant's lifetime enrollment in SBM. Officer Scott Pace, a probation supervisor for the Department of Public Safety, Division of Adult Correction, testified as the State's sole witness at the hearing. In addition to Officer Pace's testimony, the State presented photographs of the SBM equipment currently used to monitor offenders; certified copies *666 of the two sex offense judgments; and defendant's criminal record. At the close of the State's evidence, defendant moved for a directed verdict and dismissal, arguing that the State had failed to prove that SBM is a reasonable search under the Fourth Amendment. See State v. Blue , --- N.C. App. ----, ----, 783 S.E.2d 524, 527 (2016) (concluding that "the State shall bear the burden of proving that the SBM program is reasonable"). In response, the State offered arguments about the dangers of recidivism and the State's interest in protecting the public from sex offenders. After considering both parties' arguments, the trial court denied defendant's motion for a directed verdict. Defendant then presented evidence, but did not testify, and subsequently renewed his motion for judgment as a matter of law. The trial court determined that it would rule on defendant's motion out of term, subject to the parties' submission of briefs.
On 26 August 2016, the trial court entered an order concluding that (1) based on the totality of the circumstances, SBM of defendant is a reasonable search; and (2) the SBM statute is facially constitutional. Defendant appeals.
II. Standard of Review
"An appellate court reviews conclusions of law pertaining to a constitutional matter de novo." State v. Bowditch , 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010) (citation omitted). "The trial court's findings of fact are binding on appeal if they are supported by competent evidence, and they must ultimately support the trial court's conclusions of law." Id. (citation and quotation marks omitted).
III. Constitutionality
The Fourth Amendment, applied to the States through the Fourteenth Amendment, *22 protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by the government. U.S. Const. amend. IV. It is clear that SBM "effects a Fourth Amendment search." Grady , 575 U.S. at ----, 135 S.Ct. at 1371, 191 L.Ed.2d at 462. Accordingly, the only remaining issue for the trial court to determine was whether SBM is reasonable under the Fourth Amendment.
On appeal, defendant first contends that the State failed to prove that lifetime SBM is a reasonable search of defendant. We agree.
"The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Id. (citations omitted). "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, ...
*667 reasonableness generally requires the obtaining of a judicial warrant" issued upon a showing of probable cause. Vernonia Sch. Dist. 47J v. Acton , 515 U.S. 646, 653, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564, 574 (1995). "But a warrant is not required to establish the reasonableness of all government searches; and when a warrant is not required (and the Warrant Clause therefore not applicable), probable cause is not invariably required either." Id. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." Riley v. California , 573 U.S. ----, ----, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430, 439 (2014).
Grady directs us to consider two approaches for our analysis of the warrantless search in this case: (1) a "general Fourth Amendment approach" based on diminished expectations of privacy, and (2) "special needs" searches. See 575 U.S. at ----, 135 S.Ct. at 1371, 191 L.Ed.2d at 462-63 (citing Samson v. California , 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (suspicionless search of parolee was reasonable); Vernonia Sch. Dist. 47J v. Acton , 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (random drug testing of student athletes was reasonable) ). Under either approach, we use the same context-specific balancing test to determine the reasonableness of the search. Compare Samson , 547 U.S. at 848, 126 S.Ct. 2193, 165 L.Ed.2d at 256 ("Whether a search is reasonable is determined by assessing on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." (citation and quotation marks omitted) ), with Vernonia Sch. Dist. , 515 U.S. at 652-53, 115 S.Ct. 2386, 132 L.Ed.2d at 574 ("[W]hether a particular search meets the reasonableness standard is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." (citation and quotation marks omitted) ).
However, because the special needs doctrine is typically used to uphold sweeping programmatic searches, it is a "closely guarded" exception to the warrant requirement, which only applies to a limited "class of permissible suspicionless searches." Ferguson v. City of Charleston , 532 U.S. 67, 80 n.17, 121 S.Ct. 1281, 149 L.Ed.2d 205, 218 n.17 (2001). In order for the exception to apply, the "special need" advanced to justify dispensing with a warrant or individualized suspicion must be "divorced from the State's general interest in law enforcement." Id. at 79, 121 S.Ct. at 1289, 149 L.Ed.2d at 217.[1]
*668 A. Special Needs
On appeal, the State contends that SBM is a reasonable special needs search. However, according to the record, it does not appear that the trial court considered this argument, as neither the hearing transcript *23 nor the State's Memorandum In Support of the Reasonableness of Satellite Based Monitoring mentions the special needs doctrine. The State was aware that defendant challenged the constitutionality of the SBM program; indeed, that was the entire purpose of the hearing. See Grady , 575 U.S. at ----, 135 S.Ct. at 1371, 191 L.Ed.2d at 463 (remanding for North Carolina courts to "examine whether the State's monitoring program is reasonable-when properly viewed as a search"). The State had ample opportunity to argue the special needs doctrine-both at the hearing and in its subsequent brief to the trial court-but nevertheless failed to do so. Cf. State v. Romano , 369 N.C. 678, 693-94, 800 S.E.2d 644, 654 (2017) ("[T]he trial court specifically asked the parties for additional research regarding the constitutionality of the statute in regard to the unconscious defendant. ... The State had the opportunity at the suppression hearing to argue that the good faith exception to the exclusionary rule should apply if the court determined that the officer's actions were unconstitutional, but the State failed to raise the argument." (internal quotation marks omitted) ). Since the State failed to advance this constitutional argument below, it is waived. Id. at 693, 800 S.E.2d at 654 ; N.C.R. App. P. 10.
Furthermore, our Court has interpreted the Supreme Court's mandate in Grady to require case-by-case determinations of reasonableness, now commonly referred to as " Grady hearings." See, e.g. , State v. Spinks , --- N.C. App. ----, ----, 808 S.E.2d 350, 361 (2017) (Stroud, J., concurring) ("The reasonableness of the search and the totality of the circumstances under which the SBM will operate will depend necessarily upon the defendant's circumstances and the operation of SBM at the time the monitoring will be done of the defendant ." (emphasis added) ), disc. review denied , 370 N.C. 696, 811 S.E.2d 589 (2018). Following some initial uncertainty in our trial courts, the parties' burdens at Grady hearings are now well established. It is "clear that a case for satellite-based monitoring is the State's to make." State v. Greene , --- N.C. App. ----, ----, 806 S.E.2d 343, 345 (2017). And, as with other constitutional arguments, a defendant's Fourth Amendment SBM challenge must be properly asserted at the hearing in order to preserve the issue for appeal. See State v. Bishop , --- N.C. App. ----, ----, 805 S.E.2d 367, 370 (2017) (declining to issue a writ of certiorari or invoke Rule 2 to review the defendant's unpreserved Grady argument and dismissing *669 his untimely appeal for lack of jurisdiction), disc. review denied , 370 N.C. 695, 811 S.E.2d 159 (2018).[2]
Accordingly, a "general Fourth Amendment approach" based on diminished expectations of privacy is consistent with our Court's prior decisions, as well as the State's arguments below. See United States v. Knights , 534 U.S. 112, 121-22, 122 S.Ct. 587, 592-93, 151 L.Ed.2d 497, 507 (2001) (explaining that "general or individual circumstances, including 'diminished expectations of privacy,' may justify an exception to the warrant requirement" (quoting Illinois v. McArthur , 531 U.S. 326, 330, 121 S.Ct. 946, 949, 148 L.Ed.2d 838, 847 (2001) ) ).
B. Diminished Expectations of Privacy
"The Fourth Amendment does not protect all subjective expectations of privacy, but only those that society recognizes as 'legitimate.' " Vernonia Sch. Dist. , 515 U.S. at 654, 115 S.Ct. at 2391, 132 L.Ed.2d at 575. "What expectations are legitimate varies ... with context, depending, for example, upon whether the individual asserting the privacy interest is at home, at work, in a car, or in a public park." Id. (citation omitted). "In addition, the legitimacy of certain privacy expectations vis-à-vis the State may depend *24 upon the individual's legal relationship with the State." Id.
The Supreme Court has held that parolees and probationers have significantly diminished expectations of privacy as a result of their legal status. Samson , 547 U.S. at 852, 126 S.Ct. at 2199, 165 L.Ed.2d at 259 ; Knights , 534 U.S. at 119, 122 S.Ct. at 591-92, 151 L.Ed.2d at 505. These individuals "are on the 'continuum' of state-imposed punishments[,]" Samson , 547 U.S. at 850, 126 S.Ct. at 2198, 165 L.Ed.2d at 258 (citation omitted), and may be required, as reasonable conditions of parole or probation, to submit to warrantless searches at any time. Id. at 852, 126 S.Ct. at 2199, 165 L.Ed.2d at 259 ; Knights , 534 U.S. at 119, 122 S.Ct. at 591-92, 151 L.Ed.2d at 505. Moreover, "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." Samson , 547 U.S. at 853, 126 S.Ct. at 2200, 165 L.Ed.2d at 260.
*670 The Supreme Court has never addressed whether a convicted sex offender has a diminished expectation of privacy solely due to the individual's prior conviction. However, the Court has recognized a state's strong interest in protecting its citizens, particularly minors, from sex offenders. E.g. , Smith v. Doe , 538 U.S. 84, 103, 123 S.Ct. 1140, 1152-53, 155 L.Ed.2d 164, 183-84 (2003). The North Carolina General Assembly also recognizes "that protection of the public from sex offenders is of paramount governmental interest" and accordingly enacted mandatory "Sex Offender and Public Protection Registration Programs," including SBM. N.C. Gen. Stat. § 14-208.5.
At the hearing, Officer Pace testified that North Carolina's SBM program includes supervised and unsupervised offenders. Supervised offenders include probationers and individuals under post-release supervision following active sentences in the custody of the Division of Adult Correction. These individuals "are on the 'continuum' of state-imposed punishments[,]" Samson , 547 U.S. at 850, 126 S.Ct. at 2198, 165 L.Ed.2d at 258, and their expectations of privacy are accordingly diminished. Unsupervised offenders, however, are statutorily required to submit to SBM, but are not otherwise subject to any direct supervision by State officers.
Defendant is an unsupervised offender. He is not on probation or supervised release, but rather was enrolled in lifetime SBM more than three years after "all rights of citizenship which were forfeited on conviction including the right to vote, [we]re by law automatically restored" to him.[3] Solely by virtue of his legal status, then, it would seem that defendant has a greater expectation of privacy than a supervised offender. Yet, as a recidivist sex offender, defendant must maintain lifetime registration on DPS's statewide sex offender registry. N.C. Gen. Stat. § 14-208.23. The sex offender registry provides public access to "necessary and relevant information" about defendant, including his name, home address, offense history, driver's license number, fingerprints, and current photograph. Id. at §§ 14-208.5, - 208.7, -208.22. Defendant's expectation of privacy is therefore appreciably diminished as compared to law-abiding citizens.
However, it is unclear whether the trial court considered the legitimacy of defendant's privacy expectation. The trial court found, from the evidence presented at the hearing, that SBM affects defendant's Fourth Amendment interests in the following ways:
*671 Officer Pace testified about how the ankle monitor operates and how it affects the person wearing it. Included in his testimony, Officer Pace testified that the device weighs 8.7 oz., it can be worn underneath socks and/or long pants, it can be worn while bathing, showering, and swimming in pools and the ocean. The ankle monitor does not prohibit any defendant from traveling, working, or otherwise enjoying the ability to legally move about as he wishes. It does not prohibit or restrict air travel.
*25 Officer Pace has monitored defendants wearing the ankle monitor who have worked both physical labor jobs and office jobs, travelled by airplane and engaged in sporting activities including surfing. The ankle monitor does not monitor or reveal the activities of the offender-it merely monitors his location. The device does not confine the person to their residence or any other specific location. The ankle monitor and related equipment requires a quarterly (three months) review/inspection by the State to ensure that the device is in proper working order.
These findings address "the nature and purpose" of SBM, but not "the extent to which the search intrudes upon reasonable privacy expectations." Grady , 575 U.S. at ----, 135 S.Ct. at 1371, 191 L.Ed.2d at 462. This is a significant omission, because the Supreme Court has consistently emphasized the importance of viewing the "character of the intrusion" in context. See, e.g. , Knights , 534 U.S. at 119, 122 S.Ct. at 591-92, 151 L.Ed.2d at 505 ("Knights' status as a probationer subject to a search condition informs both sides of th[e reasonableness] balance."); Vernonia Sch. Dist. , 515 U.S. at 665, 115 S.Ct. at 2396-97, 132 L.Ed.2d at 582 ("We caution against the assumption that suspicionless drug testing will readily pass constitutional muster in other contexts. The most significant element in this case is the first we discussed: that the Policy was undertaken in furtherance of the government's responsibilities, under a public school system, as guardian and tutor of children entrusted to its care ." (emphasis added) ).
Viewed in context, SBM intrudes to varying degrees upon defendant's privacy through (1) the compelled attachment of the ankle monitor, and (2) the continuous GPS tracking it effects. We consider each in turn.
1. Ankle Monitor
Officer Pace testified that the SBM program currently uses an electronic monitoring device called the ExacuTrack One ("ET-1"), which is "installed" on an offender's ankle with tamper-proof fiber-optic straps.
*672 The ET-1 is physically unobtrusive: it weighs a mere 8.7 ounces and is small enough to be covered by a pant leg or sock. Unlike prior SBM devices, the ET-1 is waterproof up to 15 feet and may be worn in the ocean. The ET-1 does not physically limit an offender's movements; employment opportunities; or ability to travel, even on airplanes.[4]
On appeal, defendant complains about the audible voice warning messages that the ET-1 occasionally utters, and the need to remain near an electrical outlet for two hours each day while its lithium battery charges. However, we consider those aspects of SBM to be more inconvenient than intrusive, in light of defendant's diminished expectation of privacy as a convicted sex offender. Cf. Belleau v. Wall , 811 F.3d 929, 935 (7th Cir. 2016) (observing that "the plaintiff's privacy has already been severely curtailed" due to Wisconsin's mandatory sex offender registration law, and reasoning that any additional privacy loss he experiences when "his trouser leg hitches up and reveals an anklet monitor that may cause someone who spots it to guess that this is a person who has committed a sex crime must be slight"); see also Bowditch , 364 N.C. at 347, 700 S.E.2d at 9 (rejecting that SBM enrollment is akin to house arrest, because "[i]n this day and age, finding a source of available electricity, whether at a home, hotel, place of employment, or even in a moving vehicle, should be little or no challenge").
2. Continuous GPS Monitoring
In addition to physically intruding on defendant's body, "a constitutionally protected area," United States v. Jones , 565 U.S. 400, 406 n.3, 132 S.Ct. 945, 951 n.3, 181 L.Ed.2d 911, 919 n.3 (2012), the ET-1 also effects a continuous, warrantless search of defendant's location through the use of GPS technology. Notwithstanding defendant's diminished expectation of privacy, this aspect of SBM is "uniquely intrusive" as compared to other *26 searches upheld by the United States Supreme Court. Belleau , 811 F.3d at 940 (Flaum, J., concurring).
As a recidivist sex offender, defendant is required by law to notify the State-and by extension, the public-whenever he moves to a new address, enrolls as a student, or obtains employment at an institution of higher education. N.C. Gen. Stat. § 14-208.9(a), (c), (d). Nevertheless, this type of static information is materially different from the continuous, *673 dynamic location data SBM yields. "GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." Jones , 565 U.S. at 415, 132 S.Ct. at 955, 181 L.Ed.2d at 924 (Sotomayor, J., concurring). At the hearing, Officer Pace acknowledged that through analysis of SBM location data, the State could ascertain whether an offender was regularly visiting a doctor's office, an ABC store, or a place of worship.
However, the only portion of the trial court's order which addresses GPS monitoring is the finding that the "ankle monitor does not monitor or reveal the activities of the offender-it merely monitors his location." On appeal, the State contends that this aspect of SBM is similar to the compulsory drug testing of Oregon public high school student-athletes upheld in Vernonia Sch. Dist. 47J v. Acton , 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). See id. at 658, 115 S.Ct. at 2393, 132 L.Ed.2d at 578 (observing that one "privacy-invasive aspect of urinalysis is ... the information it discloses concerning the state of the subject's body, and the materials he has ingested"). We agree that the type of information disclosed through the search is certainly an important consideration. However, the State's use of the information is also relevant. See id. (deeming it "significant" that, inter alia , the tests "look only for drugs, and not for whether the student is, for example, epileptic, pregnant, or diabetic[,]" and that the results were "not turned over to law enforcement authorities or used for any internal disciplinary function").
Here, it is significant that law enforcement is not required to obtain a warrant in order to access defendant's SBM location data. The ability to track a suspect's whereabouts is an undeniably powerful tool in a criminal investigation. However, the State presented no evidence of defendant's current threat of reoffending, and the record evidence regarding the circumstances of his convictions does not support the conclusion that lifetime SBM is objectively reasonable.[5] Although the State has no *674 guidelines for presentation of evidence at Grady hearings, nevertheless, there must be sufficient record evidence to support the trial court's conclusion that SBM is reasonable as applied to this particular defendant .
In concluding that SBM is reasonable, the trial court heavily relied on Belleau v. Wall , 811 F.3d 929 (7th Cir. 2016).[6] However, *27 the circumstances in Belleau are starkly different from those in the instant case. In Belleau , the 7th Circuit upheld lifetime GPS monitoring of a 73-year-old man who, from 2004-2010, had been civilly committed as a "sexually violent person" by the state of Wisconsin. Id. at 931 (citing Wis. Stat. §§ 980.01(7), 980.06 ); see also id. at 935 ("[P]ersons who have demonstrated a compulsion to commit very serious crimes and have been civilly determined to have a more likely than not chance of reoffending must expect to have a diminished right of privacy as a result of the risk of their recidivating[.]"). In holding that "Wisconsin's ankle monitoring of Belleau is reasonable[,]" id. at 937, the Court considered a plethora of record evidence regarding the plaintiff's long history of molesting prepubescent children, id. at 931 ; his medical diagnosis as a pedophile and documented inability to "reduce[ ] his sexual deviance ... [and] suppress or manage his deviant arousal," id. at 934 ; the plaintiff's statistical likelihood of reoffending, as determined by his evaluating psychologist, id. ; and studies regarding the general recidivism rates of sex offenders and serious underreporting of sex crimes against children, id. at 933-34.[7]
By contrast, here, the State failed to present any evidence concerning its specific interest in monitoring defendant, or of the general *675 procedures used to monitor unsupervised offenders. Instead, the State submitted copies of the two sex offense judgments and defendant's criminal record, arguing that defendant himself was "Exhibit Number 1" of SBM's success in deterring recidivists, because "[s]ince he's been monitored, guess what: He hasn't recommitted, he hasn't been charged with another sex offense." However, Officer Pace, the State's sole witness, testified that the ET-1 cannot actually prevent an offense from occurring. And although knowledgeable about the ET-1 and monitoring supervised offenders, Officer Pace was unaware of the procedures used to monitor unsupervised offenders such as defendant, "because [he] do[es]n't deal with those" cases. "[P]eople out of Raleigh" monitor unsupervised offenders, and Officer Pace did not know "their requirements [for] checking their system."
We acknowledge the State's compelling interest in protecting the public, particularly minors, from dangerous sex offenders. Of course, it is axiomatic that "the sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people. And it is clear that a legislature may pass valid laws to protect children and other victims of sexual assault from abuse." Packingham v. North Carolina , 582 U.S. ----, ----, 137 S.Ct. 1730, 1736, 198 L.Ed.2d 273, 281 (2017) (citations and quotation marks omitted). "The government, of course, need not simply stand by and allow these evils to occur. But the assertion of a valid governmental interest cannot, in every context, be insulated from all constitutional protections." Id. (citations and quotation marks omitted); see also id. at ----, 137 S.Ct. at 1738, 198 L.Ed.2d at 283 (holding that N.C. Gen. Stat. § 14-202.5 -banning registered sex offenders from accessing "a commercial social networking Web site" known to permit minors "to become members or to create or maintain personal Web pages"-violates the First Amendment).
At the time of defendant's remand hearing, the SBM program had been in effect for approximately ten years. However, the State failed to present any evidence of its efficacy in furtherance of the State's undeniably legitimate interests. The State conceded this point on 8 August 2017 during oral arguments before this Court. Defendant, however, presented multiple reports authored by the State and federal governments rebutting *28 the widely held assumption that sex offenders recidivate at higher rates than other groups. Although the State faulted defendant for presenting statistics about supervised offenders, the State bears the burden of proving reasonableness at Grady hearings. Blue , --- N.C. App. at ----, 783 S.E.2d at 527. Here, we are compelled to conclude that the State failed to carry its burden. *676 We emphasize, however, that our holding is limited to the facts of this case. We reiterate the continued need for individualized determinations of reasonableness at Grady hearings. As we held in Greene , the State will have only one opportunity to prove that SBM is a reasonable search of the defendant. --- N.C. App. at ----, 806 S.E.2d at 344-45 (reversing without remanding the lifetime SBM order where "[t]he State offered no further evidence beyond defendant's criminal record"). And the defendant will have one opportunity to assert a Fourth Amendment challenge or risk appellate waiver of the issue. See Bishop , --- N.C. App. at ----, 805 S.E.2d at 370 ("Bishop is no different from other defendants who failed to preserve their constitutional arguments in the trial court, and because he has not argued any specific facts that demonstrate manifest injustice if we decline to invoke Rule 2, we do not believe this case is an appropriate use of that extraordinary step.").
IV. Conclusion
As a recidivist sex offender, defendant's expectation of privacy is appreciably diminished as compared to law-abiding citizens. However, the State failed to present any evidence of its need to monitor defendant, or the procedures actually used to conduct such monitoring in unsupervised cases. Therefore, the State failed to prove, by a preponderance of the evidence, that lifetime SBM of defendant is a reasonable search under the Fourth Amendment. Because we have determined that the trial court erred by concluding that SBM is a reasonable search of defendant, we need not address the parties' remaining arguments. We reverse the trial court's order.
REVERSED.
Judge STROUD concurs.
Judge BRYANT dissents in a separate opinion.

The Supreme Court has upheld warrantless searches based on a variety of "special needs." See, e.g. , United States v. Flores-Montano , 541 U.S. 149, 124 S.Ct. 1582, 158 L.Ed.2d 311 (2004) (suspicionless searches of vehicles at the international border); Vernonia Sch. Dist. 47J v. Acton , 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (suspicionless drug testing of public high school athletes); Griffin v. Wisconsin , 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (search of a probationer's home).

But see State v. Bursell , No. COA16-1253, --- N.C. App. ----, ----, 813 S.E.2d 463, 467, 2018 WL 1953403, at *4 (filed March 20, 2018) ("In view of the gravity of subjecting someone for life to a potentially unreasonable search of his person in violation of his Fourth Amendment rights, especially when considering defendant's young age, the particular factual bases underlying his pleas, and the nature of those offenses, combined with the State's and the trial court's failures to follow well-established precedent in applying for and imposing SBM, and the State's concession of reversible Grady error, even if this argument was unpreserved, in our discretion we would invoke Rule 2 to relax Rule 10(a)(1)'s issue-preservation requirement in order to prevent manifest injustice to defendant.").

But see N.C. Gen. Stat. § 14-415.1 (making it "unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction").

Compare the water resistance and travel flexibility afforded by the current SBM device with the one used in 2010. See Bowditch , 364 N.C. at 339-40, 700 S.E.2d at 4-5 ("Submerging the ankle bracelet in three feet or more of water generates a 'bracelet gone' alert[,] ... and commercial airplane flight is likely limited due to security regulations.").

The only evidence within the appellate record of the circumstances underlying defendant's sex offense convictions is in the Memorandum In Support of Defendant's Motion for Judgment As a Matter of Law, which states:
"[T]he evidence that the State did present shows that although [defendant] was convicted of second degree sexual offense in 1996 when he was 17 years old, and that he pled 'no contest' to that charge. See State's Exhibit 5. The State also relied on the prior court record in this case to show that [defendant] was convicted in 2006 of indecent liberties. The indictment, also a part of that court record, indicates that this conviction was based on [defendant]'s having had [a] non-forcible sexual relationship with a fifteen-year-old female, when he was 26 years old."
State's Exhibit 5 was not provided to this Court.

The trial court also relied on People v. Hallak , 310 Mich.App. 555, 873 N.W.2d 811 (2015), rev'd on other grounds , 499 Mich. 879, 876 N.W.2d 523 (2016) (mem.). However, that case is readily distinguishable. The Hallak defendant, a medical doctor, was sentenced to lifetime electronic monitoring due to his conviction for second-degree criminal sexual conduct for improperly touching a 12-year-old patient. See 873 N.W.2d at 826 ("[A]lthough this monitoring lasts a lifetime, the Legislature presumably provided shorter prison sentences for these ... convictions because of the availability of lifetime monitoring."). Unlike Michigan's electronic monitoring program, North Carolina's SBM program is civil and nonpunitive in nature. Compare id. at 825 ("[I]t is evident that in enacting this monitoring provision, the Legislature was seeking to provide a way in which to both punish and deter convicted child sex offenders and to protect society from a group known well for a high recidivism rate."), with Bowditch , 364 N.C. at 342, 700 S.E.2d at 6 ("[T]he legislative objective in enacting SBM was to establish a nonpunitive, regulatory program.").

The concurring judge would have upheld Wisconsin's monitoring program as a reasonable special needs search. See Belleau , 811 F.3d at 940 (Flaum, J., concurring) ("[T]he GPS monitoring provided under the Wisconsin law occurs constantly, lasts indefinitely, and is the subject of periodic government scrutiny. Accordingly, this monitoring program is uniquely intrusive, likely more intrusive than any special needs program upheld to date by the Supreme Court." (citations omitted) ).