IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-386-2

Filed: 18 February 2020

Craven County, No. 03 CRS 53794

STATE OF NORTH CAROLINA

v.

THOMAS EARL GRIFFIN, Defendant.

Appeal by Defendant from order entered 1 September 2016 by Judge Benjamin G. Alford in Craven County Superior Court. Heard in the Court of Appeals 19 September 2017, and opinion filed 7 August 2018. Remanded to this Court by order of the North Carolina Supreme Court for further consideration in light of *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019). Heard in this Court on remand on 8 January 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph Finarelli, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for Defendant-Appellant.*

INMAN, Judge.

Following the Supreme Court of North Carolina's decision in *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019) (*Grady III*), we hold that the trial court's order imposing satellite based monitoring ("SBM") of a sex offender for thirty years,

considering the totality of the circumstances of this case, is unreasonable and violates the Fourth Amendment to the United States Constitution.

In *State v. Griffin*, ___ N.C. App. ___, ___, 818 S.E.2d 336, 342 (2018) (*Griffin I*), this Court held that the State failed to demonstrate the reasonableness of a warrantless search of Defendant Thomas Earl Griffin ("Defendant") through imposition of SBM for a term of thirty years in violation of the Fourth Amendment to the United States Constitution. Our holding was based on this Court's decision in *State v. Grady*, ___ N.C. App. ___, 817 S.E.2d 18 (2018) ("*Grady II*"), holding that lifetime SBM was unconstitutional as applied to a recidivist defendant because the State "failed to present any evidence of [SBM's] efficacy in furtherance of the State's undeniably legitimate interests." ___ N.C. App. at ___, 817 S.E.2d at 27.

After *Griffin I* was filed, the Supreme Court of North Carolina modified and affirmed *Grady II*, holding in *Grady III* that lifetime SBM was unconstitutional as applied to Mr. Grady *and* all defendants who were not on probation or post-release supervision but subject to lifetime SBM solely on the basis of recidivism. *Grady III*, 372 N.C. at 591, 831 S.E.2d at 572. *Griffin I* was then remanded to this Court by order of the Supreme Court "for further consideration in light of . . . [*Grady III*]."

After careful review following the decision in *Grady III*, supplemental briefing, and oral argument, we again hold that the imposition of SBM under N.C. Gen. Stat.

§ 14-208.40(a)(2) per the trial court's order is unconstitutional as applied to Defendant.[1] We again reverse the trial court's order.

## I. **FACTUAL AND PROCEDURAL HISTORY**

The facts of this case are fully described in *Griffin I*. ___ N.C. App. at ___, 818 S.E.2d at 337-39. However, since those facts do not render *Grady III* entirely dispositive of this appeal and the resolution of an as-applied challenge "is strongly influenced by the facts in a particular case[,]" *State v. Packingham*, 368 N.C. 380, 393, 777 S.E.2d 738, 749 (2015), *rev'd and remanded on other grounds*, 582 U.S. ___, 198 L. Ed. 2d 273 (2017), we recite pertinent details.

In 2004, Defendant entered an *Alford* plea to one count of first-degree sex offense with a child. *Griffin I*, ___ N.C. App. at ___, 818 S.E.2d at 337. At sentencing, Defendant admitted to the digital and penile penetration of his girlfriend's minor daughter over the course of three years. *Id.* at ___, 818 S.E.2d at 338. The trial court sentenced Defendant to imprisonment for 144 to 182 months and recommended the completion of SOAR, a sex offender treatment program. *Id.*

Eleven years after his conviction, in 2015, Defendant was released from prison on a five-year term of post-release supervision. *Id.* Three months later, the State sought SBM of Defendant under N.C. Gen. Stat. § 14-208.40(a)(2), as he had been

---

[1] At oral argument, Defendant made clear his constitutional challenge to SBM was limited to the facts of the instant case and that he was not pressing a facial constitutional challenge to the entire statutory SBM regime. We therefore limit our decision to the as-applied argument advanced by this appeal.

sentenced for a reportable sex offense as defined by N.C. Gen. Stat. § 14-208.6(4) and therefore could be subject to SBM if ordered by a court. *Id.*

Defendant appeared before the trial court at a "bring-back" hearing in August 2016, where a "Revised STATIC-99 Coding Form" ("Static-99"), prepared by the Division of Adult Correction and Juvenile Justice and designed to estimate the probability of recidivism, was entered into evidence. *Id.* According to the Static-99, Defendant presented a "moderate-low" risk, the second lowest of four possible categories. *Id.*

The State called Defendant's parole officer as a witness, who testified that Defendant failed to complete the SOAR program but had not violated any terms of his post-release supervision. *Id.* The officer also described the physical characteristics and operation of the SBM device. *Id.* The State did not introduce any evidence regarding how it would use the SBM data or whether SBM would be effective in protecting the public from potential recidivism by Defendant. *Id.*

After taking the matter under advisement, the trial court entered a written order imposing SBM on Defendant for thirty years. *Id.* at ___, 818 S.E.2d at 338-39. That order included the following findings of fact and conclusion of law:

> 1. The defendant failed to participate in and[/]or complete the SOAR program.
>
> 2. The defendant took advantage of the victim's young age and vulnerability: the victim was 11 years old [while] the defendant was 29 years old.

3. The defendant took advantage of a position of trust; the defendant was the live-in boyfriend of the victim's mother. The family had resided together for at least four years and [defendant] had a child with the victim's mother.

4. Sexual abuse occurred over a three year period of time.

The court has weighed the Fourth Amendment right of the defendant to be free from unreasonable searches and seizures with the publics [sic] right to be protected from sex offenders and the court concludes that the publics [sic] right of protection outweighs the "de minimis" intrusion upon the defendant's Fourth Amendment rights.

*Id.* at ___, 818 S.E.2d at 339.

Based on the above record, we held in *Griffin I* that "because the State failed to present any evidence that SBM is effective to protect the public from sex offenders, this Court's decision in *Grady II* compels us to reverse the trial court's order requiring Defendant to enroll in SBM for thirty years." *Id.* at ___, 818 S.E.2d at 342.

## II. ANALYSIS

We re-evaluate Defendant's appeal as directed by the Supreme Court, considering *Grady III* and determining whether that decision impacts our prior reversal of the SBM order. Because *Grady III* modifies and affirms *Grady II*, we look to both opinions to discern the scope, effect, and import of *Grady III*. We begin, then, with a review of *Grady II*.

## A. *Grady II*

In *Grady II*, this Court determined whether lifetime SBM imposed on an unsupervised recidivist defendant was " 'reasonable—when properly viewed as a search[.]' " *Grady II*, ___ N.C. App. at ___, 817 S.E.2d at 21 (quoting *Grady v. North Carolina*, 575 U.S. 306, 310, 191 L. Ed. 2d 459, 463 (2015)). We ultimately held that Mr. Grady's diminished privacy expectations did not render lifetime SBM reasonable under the totality of the circumstances. *Id.* at ___, 817 S.E.2d at 28.

Our analysis in *Grady II* focused on four things: (1) the defendant's expectation of privacy as a convicted sex offender subject to registration, *id.* at ___, 817 S.E.2d at 23-25; (2) the physical intrusion of the SBM monitor itself, *id.* at ___, 817 S.E.2d at 25; (3) SBM's continuous intrusion into the defendant's locational privacy interest, *id.* at ___, 817 S.E.2d at 25-26; and (4) the State's interest in monitoring the defendant and whether lifetime SBM served that interest, *id.* at ___, 817 S.E.2d at 27-28. [2]

As to the first circumstance, we held that registration on the sex offender registry meant the "[d]efendant's expectation of privacy [was] . . . appreciably diminished as compared to law-abiding citizens." *Id.* at ___, 817 S.E.2d at 24. We next explained that the impact of the ankle monitor used to conduct SBM was "more inconvenient than intrusive, in light of [the] defendant's diminished expectation of

---

[2] We reviewed the issue under a "general Fourth Amendment approach based on diminished expectations of privacy" and declined to examine whether the SBM order constituted a special needs search, holding that the State's failure to raise a special needs argument before the trial court resulted in its waiver on appeal. *Id.* at ___, 817 S.E.2d at 23 (citations and quotation marks omitted).

privacy as a convicted sex offender." *Id.* at \_\_\_, 817 S.E.2d at 25. We also observed, however, that SBM's "continuous, warrantless search of defendant's location through the use of GPS technology . . . . is 'uniquely intrusive' as compared to other searches upheld by the United States Supreme Court." *Id.* at \_\_\_, 817 S.E.2d at 25-26 (quoting *Belleau v. Wall*, 811 F.3d 929, 940 (7th Cir. 2016) (Flaum, J., concurring)). Lastly, we recognized "the State's compelling interest in protecting the public, particularly minors, from dangerous sex offenders[,]" *id.* at \_\_\_, 817 S.E.2d at 27, but nonetheless held the SBM search unreasonable because "the State failed to present any evidence of its need to monitor defendant, or the procedures actually used to conduct such monitoring in unsupervised cases." *Id.* at \_\_\_, 817 S.E.2d at 28. In announcing that holding, we stressed that it was strictly "limited to the facts of this case." *Id.*

## B. *Grady III*

Our decision in *Grady II* was modified and affirmed by our Supreme Court in *Grady III*. In a comprehensive opinion, the Supreme Court reviewed every aspect of this Court's analysis in *Grady II* and identified two points of express disagreement: (1) "the Court of Appeals erroneously limited its holding to the constitutionality of the program as applied only to Mr. Grady, when our analysis of the reasonableness of the search applies equally to anyone in Mr. Grady's circumstances[,]" *Grady III*, 372 N.C. at 510-11, 831 S.E.2d at 546 (citation omitted); and (2) the Supreme Court "[dis]agree[d] with the Court of Appeals that [the SBM ankle monitor's] physical

restrictions, which require defendant to be tethered to a wall for what amounts to one month out of every year, are 'more inconvenient than intrusive.' " *Id.* at 535-36, 831 S.E.2d at 562-63 (citations omitted).[3] It then modified the holding in *Grady II* to expand its application "equally to anyone in defendant's circumstances," rendering SBM monitoring under N.C. Gen. Stat. §§ 14-208.40A(c) and 14-208.40B(c) unconstitutional as applied to any registered sex offenders who are otherwise not under State supervision but would be subject to SBM solely on the basis of recidivism. *Id.* at 550-51, 831 S.E.2d at 572.

Despite broadening *Grady II*'s impact, *Grady III* examined largely the same factors: (1) the nature of the defendant's legitimate privacy interests in light of his status as a registered sex offender, *id.* at 527-34, 831 S.E.2d at 557-61; (2) the intrusive qualities of SBM into the defendant's privacy interests, *id.* at 534-38, 831 S.E.2d at 561-64; and (3) the State's legitimate interests in conducting SBM monitoring and the effectiveness of SBM in addressing those interests, *id.* at 538-45, 831 S.E.2d at 564-68.

The Supreme Court first concluded that SBM intruded upon the defendant's privacy interests in his physical person, *id.* at 527-28, 831 S.E.2d at 557, his home, *id.* at 528, 831 S.E.2d at 557, and his location and movements, *id.* at 528-29, 831

---

[3] Although the Supreme Court did not directly contradict this Court's determination that the State had failed to preserve a "special needs" analysis of the SBM program on appeal, it did address the question of whether a special need was present on the merits and concluded that "the 'special needs' doctrine is not applicable here." *Id.* at 527, 831 S.E.2d at 557 (citations omitted).

S.E.2d at 557-58. Though the defendant was a convicted felon and did have to register as a sex offender, the Supreme Court held those facts diminished his privacy interests only in contexts distinct from SBM. *See id.* at 531, 831 S.E.2d at 559 ("None of the conditions imposed by the registry implicate an individual's Fourth Amendment 'right . . . to be secure in [his] person[ ]' or his expectation of privacy 'in the whole of his physical movements.'" (quoting *Carpenter v. United States*, 585 U.S. ___, ___, 201 L. Ed. 2d 507, 523 (2018)). It also drew a contrast between Mr. Grady and defendants subject to probation or post-release supervision:

> Even if defendant has no reasonable expectation of privacy concerning where he lives because he is required to register as a sex offender, he does not thereby forfeit his expectation of privacy in all other aspects of his daily life. This is especially true with respect to unsupervised individuals like defendant who, unlike probationers and parolees, are not on the "continuum of possible [criminal] punishments" and have no ongoing relationship with the State.

*Id.* at 531, 831 S.E.2d at 559-60 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 97 L. Ed. 2d 709, 718 (1987)). The Supreme Court summarized this portion of its analysis by concluding, "except as reduced for possessing firearms and by providing certain specific information and materials to the sex offender registry, defendant's constitutional privacy rights, including his Fourth Amendment expectations of privacy, have been restored." *Id.* at 534, 831 S.E.2d at 561.

Turning to the intrusive nature of SBM, the Supreme Court noted that recidivists who are required to undergo SBM do not receive the benefit of judicial

review of the search's necessity prior to or following its imposition, and "the fact that North Carolina's mandatory SBM program involves no meaningful judicial role is important in the analysis of the constitutionality of the program." *Id.* at 535, 831 S.E.2d at 562.[4] It then explained that SBM constituted a significant invasion of Mr. Grady's physical privacy, as "Mr. Grady . . . must not only wear the half-pound ankle monitor at all times and respond to any of its repeating voice messages, but he also must spend two hours of every day plugged into a wall charging the ankle monitor." *Id.* The Supreme Court held that the State's ability to track Mr. Grady's movements was likewise a substantial intrusion: "mandatory imposition of lifetime SBM on an individual in defendant's class works a deep, if not unique, intrusion upon that individual's protected Fourth Amendment interests." *Id.* at 538, 831 S.E.2d at 564.

In the final step of its analysis, the Supreme Court looked to the State's interests in imposing SBM and " 'consider[ed] the nature and immediacy of the governmental concern at issue here, and the efficacy of this means for meeting it.' " *Id.* (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 660, 132 L. Ed. 2d 564, 579 (1995)). It identified several compelling interests promoted by the State, namely protecting the public from sex offenders through solving crimes, reducing recidivism, and deterring criminality. *Id.* at 538-39, 543, 831 S.E.2d at 564-65, 567. Despite

---

[4] The Supreme Court noted that those subject to lifetime SBM do have the opportunity to petition for termination of SBM in front of the Post-Release Supervision and Parole Commission. *Id.* at 534, 831 S.E.2d at 562. It also held that such an opportunity was not equivalent to or a substitute for judicial review of a warrantless search. *Id.* at 534-35, 831 S.E.2d at 562.

acknowledging the legitimacy of these interests, the Supreme Court echoed the efficacy-based decision in *Grady II* and wrote that "a problem justifying the need for a warrantless search cannot simply be assumed; instead, the existence of the problem and the efficacy of the solution need to be demonstrated by the government." *Id.* at 540-41, 831 S.E.2d at 566. It further noted that reliance on "unsupported assumptions . . . [does not] suffice to render an otherwise unlawful search reasonable." *Id.* at 543 n.20, 831 S.E.2d at 567 n.20. Given that the State failed to introduce any evidence that SBM is effective in protecting the public against sex offenders, the Supreme Court refused to "simply assume that the program serves its goals and purposes when determining whether the State's interest outweighs the significant burden that lifetime SBM imposes on the privacy rights of recidivists subjected to it[.]" *Id.* at 544, 831 S.E.2d at 568. And, because "the State . . . simply failed to show how monitoring [a recidivist] individual's movements for the rest of his life would deter future offenses, protect the public, or prove guilt of some later crime[,]" the Supreme Court held that "the State has not met its burden of establishing the reasonableness of the SBM program under the Fourth Amendment balancing test required for warrantless searches." *Id.*

The Supreme Court did not, however, treat the lack of evidence that SBM is effective as a dispositive threshold issue, as opposed to one factor among the totality of the circumstances. *See id.* at 543, 831 S.E.2d at 567 ("The State's inability to

produce evidence of the efficacy of the lifetime SBM program in advancing any of its asserted legitimate State interests *weighs heavily against* a conclusion of reasonableness here." (emphasis added)).

Following the above analysis, the Supreme Court reached its ultimate holding: not only was mandatory lifetime SBM under N.C. Gen. Stat. §§ 14-208.40A(c) and 14-208.40B(c) unconstitutional as applied to Mr. Grady, it was also unconstitutional as applied to all unsupervised defendants who received mandatory lifetime SBM solely on the basis of recidivism. *Id.* at 550-51, 831 S.E.2d at 572. In other words, because SBM monitoring of such a defendant on the basis of recidivism alone would never be reasonable under the totality of the circumstances, this Court erred in limiting its holding in *Grady II.* *See id.* at 545, 831 S.E.2d at 568 ("In these circumstances, the SBM program cannot constitutionally be applied to recidivists in Grady's category on a lifetime basis as currently required by the statute."). The Supreme Court was mindful to restrict this quasi-facial element of its decision to the specific facts before it:

> The category to which this holding applies includes only those individuals who are not on probation, parole, or post-release supervision; who are subject to lifetime SBM solely by virtue of being recidivists as defined by the statute; and who have not been classified as a sexually violent predator, convicted of an aggravated offense, or are adults convicted of statutory rape or statutory sex offense with a victim under the age of thirteen.

*Id.* at 545, 831 S.E.2d at 568-69.

- 12 -

## C. *Grady III*'s Effect on This Appeal

Defendant's circumstances place him outside of the facial aspect of *Grady III*'s holding; he is not an unsupervised recidivist subject to mandatory lifetime SBM, but is instead a felon on post-release supervision who was convicted of an offense involving the physical, mental, or sexual abuse of a minor.  Defendant, then, is subject to SBM under N.C. Gen. Stat. § 14-208.40(a)(2), not subsection (a)(1) as in the *Grady* cases, and he therefore received the benefit of a risk assessment and judicial determination of whether and for how long he would be subject to the SBM search. *See* N.C. Gen. Stat. §§ 14-208.40A(d)-(e) (2019) (providing that defendants subject to SBM under N.C. Gen. Stat. § 14-208.40(a)(2) must receive a risk assessment before the trial court "determines . . . the offender does require the highest possible level of supervision and monitoring" and imposes SBM for "a period of time to be specified by the court").  Plainly, then, *Grady III*'s holding does not directly determine the outcome of this appeal.

Although *Grady III* does not compel the result we must reach in this case, its reasonableness analysis does provide us with a roadmap to get there.  As conceded by the State at oral argument, *Grady III* offers guidance as to what factors to consider in determining whether SBM is reasonable under the totality of the circumstances. We thus resolve this appeal by reviewing Defendant's privacy interests and the nature of SBM's intrusion into them before balancing those factors against the State's

interests in monitoring Defendant and the effectiveness of SBM in addressing those concerns. *See Grady III*, 372 N.C. at 527, 534, 538, 831 S.E.2d at 557, 561, 564. Before doing so, however, we must address whether that analysis is conducted pursuant to the "special needs" doctrine or upon a diminished expectation of privacy as was done in *Grady III*. *See id.* at 524-27, 831 S.E.2d at 555-57.

*1. Special Needs v. Diminished Expectations of Privacy*

In its initial briefing to this Court, the State argued that SBM serves a special need in this case. However, we held in *Griffin I* that the State's failure to assert a special need before the trial court waived that argument on appellate review. *Griffin I*, ___ N.C. App. at ___ n.5, 818 S.E.2d at 340 n.5. We reaffirm our holding that the State's failure to advance a special need before the trial court waived its application on appeal, and, even assuming *arguendo* that this argument was not waived, we conclude that it is inapplicable to the SBM order appealed here.

Defendant is subject to post-release supervision until June of this year. As recognized in *Grady III*, a supervisory relationship between a defendant and the State may give rise to a special need for warrantless searches. 372 N.C. at 526, 831 S.E.2d at 556 (rejecting the State's special needs argument partly on the basis that Mr. Grady was unsupervised and was "not [in] a situation . . . in which there is any 'ongoing supervisory relationship' between defendant and the State" (quoting *Griffin*

*v. Wisconsin*, 483 U.S. at 879, 97 L. Ed. 2d at \_\_\_)). The thirty years of SBM at issue in this appeal is unrelated to the State's post-release supervision of Defendant.

As acknowledged by counsel at oral argument, all defendants convicted of a reportable conviction or the sexual abuse of a minor who receive post-release supervision must submit to SBM as a condition of their release. *See* N.C. Gen. Stat. § 15A-1368.4(b1)(7) (2019) (establishing SBM monitoring as a required condition of post-release supervision for registered sex offenders and those convicted of sexual abuse of a minor).

Defendant has not contested the imposition of SBM as a condition of post-release supervision but has instead appealed an entirely different search lasting six times the length of his supervisory relationship with the State. In light of the fact that the State's special need to monitor Defendant through SBM can already be met as a term of his release—and given that Defendant has not contested the imposition of SBM in connection with his post-release supervision—we analyze the separate, thirty-year SBM search imposed independent of his supervised release under a diminished expectation of privacy exception to the Fourth Amendment's warrant requirement rather than as a special needs search. *Cf. Grady III*, 372 N.C. at 526-27, 831 S.E.2d at 556-57 ("[T]he primary purpose of SBM is to solve crimes. . . . Because the State has not proffered any concerns other than crime detection, the

special needs doctrine is not applicable here." (citations and quotation marks omitted)).

*2. Defendant's Privacy Interests*

Defendant, as a registered sex-offender subject to post-release supervision, does have a diminished expectation of privacy in some respects. His appearance on the sex offender registry does not mean, however, that his rights to privacy in his person, his home, and his movements are forever forfeit. *Id.* at 534, 831 S.E.2d at 561. And while those rights may be appreciably diminished during his five-year term of post-release supervision, that is not true for the remaining 25 years of SBM imposed here. Treating this search on its own terms, Defendant's "constitutional privacy rights, including his Fourth Amendment expectations of privacy, [will] have been restored" one-sixth of the way into the warrantless search at issue. *Id.* Defendant, then, will enjoy appreciable, recognizable privacy interests that weigh against the imposition of SBM for the remainder of the thirty-year term.

*3. Intrusive Nature of SBM*

*Grady III* made several observations concerning the intrusive nature of SBM, and those same observations generally apply here. For example, the physical qualities of the monitoring device used in this case appear largely similar to those in *Grady III*, and thus meaningfully conflict with Defendant's physical privacy rights. *Id.* at 535-37, 831 S.E.2d at 562-63. And, as recognized in *Grady III*, SBM's ability to

track Defendant's location is "uniquely intrusive," *id.* at 537, 831 S.E.2d at 564 (citation and quotation marks omitted), and thus weighs against the imposition of SBM.

Despite the above parallels, the intrusion in this case is different from that in *Grady III* in some respects. Defendant is subject to thirty years of warrantless intrusions, not a lifetime, and, unlike recidivists, was ordered to submit to that term of SBM after a risk assessment and a determination by the trial court that he "require[s] the highest possible level of supervision and monitoring[.]" N.C. Gen. Stat. § 14-208.40A(e). These differences, however, do not sufficiently tilt the scales in favor of SBM in this case. The thirty-year term of SBM imposed here, though less than a lifelong term, nonetheless constitutes a significantly lengthy and burdensome warrantless search. Although Defendant did have the benefit of judicial review in determining whether SBM should be imposed, persons subject to SBM for a term of years do not have the opportunity to later petition the Post-Release Supervision and Parole Commission for relief. "In [this] aspect, the intrusion of SBM on Defendant in this case is greater than the intrusion imposed in *Grady II* [and *Grady III*], because unlike an order for lifetime SBM, which is subject to periodic challenge and review, an order imposing SBM for a period of years is not subject to later review[.]" *Griffin I*, ___ N.C. App. at ___, 818 S.E.2d at 341 (citing N.C. Gen. Stat. § 14-208.43). Thus, even when these differences from *Grady III* are taken into account, the intrusive

nature of SBM as implemented in this case weighs against the reasonableness of the warrantless search ordered below.

*4. The State's Interests*

Our case law is clear that the State has advanced legitimate interests in favor of SBM. *See, e.g., Grady III*, 372 N.C. at 543, 831 S.E.2d at 568 ("[T]he State's asserted interests here are without question legitimate[.]"). Those interests, as acknowledged in *Grady III* and *Griffin I*, include protecting the public from sex offenders, *Griffin I*, ___ N.C. App. at ___, 818 S.E.2d at 341, reducing recidivism, *id.*, solving crimes, *Grady III*, 372 N.C. at 542, 831 S.E.2d at 567, and deterring criminality, *id.* at 543, 831 S.E.2d at 567. But, in addition to showing valid objectives, "the State bears the burden of proving the reasonableness of a warrantless search" which, in the context of SBM, includes "the burden of coming forward with some evidence that its SBM program assists in apprehending sex offenders, deters or prevents new sex offenses, or otherwise protects the public." *Id.* at 543-44, 831 S.E.2d at 568 (citation omitted). The State's failure to produce any evidence in this regard "weighs heavily against a conclusion of reasonableness[.]" *Id.* at 543, 831 S.E.2d at 567.

The State conceded at oral argument that it did not introduce any record evidence before the trial court showing SBM is effective in accomplishing any of the State's legitimate interests. *See also Griffin I*, ___ N.C. App. at ___, 818 S.E.2d at 340

(noting the absence of record evidence on efficacy). Although the State proffered testimony that Defendant had betrayed the minor victim's trust and then failed to complete the SOAR program in prison, "[t]he SBM order did not reflect in any finding or conclusion whether the trial court determined that Defendant's betrayal of trust or failure to complete or participate in SOAR increased his likelihood of recidivism." *Id.* at ___, 818 S.E.2d at 342.

The Static-99 produced by the State disclosing a "moderate-low risk" of reoffending is, standing alone, "insufficient to support the imposition of SBM on a sex offender." *Id.* (citing *State v. Kilby*, 198 N.C. App. 363, 370, 679 S.E.2d 430, 434 (2009); *State v. Thomas*, 225 N.C. App. 631, 634, 741 S.E.2d 384, 387 (2013)). And, as explained above, the State's interest in monitoring Defendant via SBM during post-release supervision is already accomplished by a mandatory condition of post-release supervision imposing that very thing. *See* N.C. Gen. Stat. § 15A-1368.4(b1)(7). The State, therefore, failed to carry its burden to produce evidence that the thirty-year term of SBM imposed in this case is effective to serve legitimate interests.

*5. Reasonableness of SBM Under the Totality of These Circumstances*

As explained above, the circumstances reveal that Defendant has appreciable privacy interests in his person, his home, and his movements—even if those interests are diminished for five of the thirty years that he is subject to SBM. Those privacy

interests are, in turn, substantially infringed by the SBM order imposed in this case. Taken together, these factors caution strongly against a conclusion of reasonableness, and they are not outweighed by evidence of any legitimate interest served by monitoring Defendant given the State's failure to meet its burden showing SBM's efficacy in accomplishing the State's professed aims. In short, the totality of the circumstances discloses that the order for thirty years of SBM in this case constitutes an unreasonable warrantless search in violation of the Fourth Amendment. We therefore hold, consistent with the balancing test employed in *Grady III*, that the imposition of SBM under N.C. Gen. Stat. § 14-208.40(a)(2) as required by the trial court's order is unconstitutional as applied to Defendant and must be reversed. *See State v. Greene*, ___ N.C. App. ___, ___, 806 S.E.2d 343, 345 (2017) (holding that when the State had the opportunity but failed to introduce evidence in showing the reasonableness of SBM, reversal—rather than vacatur and remand—is the appropriate disposition).

### III. <u>CONCLUSION</u>

We reaffirm our prior disposition under *Griffin I*, as that result is consistent with the totality of the circumstances test as employed by our Supreme Court in *Grady III*. Because the order imposing thirty years of SBM is an unreasonable warrantless search of Defendant in violation of the Fourth Amendment, we reverse the trial court's order.

REVERSED.

Judge YOUNG concurs.

Judge BRYANT concurs in the result only.