IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-226

Filed: 19 May 2020

Catawba County, No. 05CRS8924

STATE OF NORTH CAROLINA

v.

DONALD EUGENE HILTON

Appeal by Defendant from order entered 10 May 2018 by Judge Daniel A. Kuehnert in Catawba County Superior Court. Heard in the Court of Appeals 18 September 2019.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph Finarelli, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Nicholas C. Woomer-Deters, for Defendant-Appellant.*

DILLON, Judge.

Donald Eugene Hilton ("Defendant") appeals from the trial court's order enrolling him in lifetime satellite-based monitoring ("SBM"), contending that the imposition of SBM constitutes an unreasonable search. We conclude that the imposition of SBM on Defendant *during the period of his post-release supervision* constitutes a reasonable search. However, we conclude that the imposition of SBM *thereafter* is unreasonable and remand for additional findings. Accordingly, we affirm in part, and reverse in part and remand.

## I. Background

In 2005, Defendant committed various sex crimes with a minor female. In April 2007, Defendant pleaded guilty to statutory rape and to a statutory sexual offense stemming from his 2005 conduct. He was sentenced to 144 to 182 months of imprisonment. In his sentence, he was given credit for approximately 22 months for his pre-sentence confinement, leaving a remaining sentence of approximately 122 months (or about 10 years) to 160 months (or about 13 years).

In July 2017, approximately 122 months after being sentenced, Defendant was released from prison, but subject to post-release supervision. As a condition of his post-release supervision, Defendant was ordered *not* to leave Catawba County without the consent of his probation officer.[1]

During his post-release supervision period, Defendant violated a post-release supervision condition by leaving Catawba County, traveling to Caldwell County, without the knowledge or approval of his probation officer. He was subsequently arrested for and charged with taking indecent liberties with his fifteen-year-old niece, while absconding in Caldwell County.

---

[1] It appears from the record that Defendant was imprisoned for a total of about twelve (12) years, as he was arrested in 2005 and released in 2017. We note that the trial court, in its order imposing lifetime SBM found that Defendant "served a sentence of 15 years and two months." However, this finding is not supported by the record and appears to be a misstatement: 15 years and two months (or 182 months) represents *the maximum* term of imprisonment Defendant was sentenced to, not the term he had actually served.

In April 2018, following his arrest, Catawba County prosecutors noticed a hearing for the trial court to consider whether Defendant should be required to enroll in the SBM program based on his 2007 convictions, (not based on his post-conviction absconding violation). After a hearing on the matter, the trial court ordered Defendant to enroll in the SBM program for the rest of his natural life.

Defendant appeals.

## II. Jurisdiction

An appeal of right lies with this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2017). *See State v. Singleton*, 201 N.C. App. 620, 626, 689 S.E.2d 562, 566 (2010) ("this Court has jurisdiction to consider appeals from SBM monitoring determinations under N.C. Gen. Stat. § 14-208.40B pursuant to N.C. Gen. Stat. § 7A-27").

## III. Standard of Review

"An appellate court reviews conclusions of law pertaining to a constitutional matter *de novo*." *State v. Bowditch*, 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010).

## IV. Analysis

The trial court mandated that Defendant be enrolled in *lifetime* SBM under Section 14-208.40B. N.C. Gen. Stat. § 14-208.40B (2018). Defendant makes no argument that the trial court exceeded its authority *under our General Statutes*. Indeed, the trial court acted within its *statutory* authority to impose lifetime SBM on

Defendant in the callback hearing, as the trial court found that Defendant's 2007 conviction was for an "aggravated offense." *See* N.C. Gen. Stat. § 14-208.40B ("If the court finds that . . . the conviction offense was an aggravated offense . . . the court shall order the offender to enroll in satellite-based monitoring for life.").

Rather, Defendant argues that the trial court exceeded its *constitutional* authority, that the imposition of lifetime SBM under Section 14-208.40B as applied in his case constitutes an unreasonable search under the Fourth Amendment of the United States Constitution.

We conclude that the imposition of lifetime SBM under Section 14-208.40B is unconstitutional as applied to this Defendant, *in part*. Specifically, we hold that the imposition of SBM *beyond* the period of Defendant's post-release supervision constitutes an unreasonable search. However, the imposition of SBM *during* the period of his post-release supervision is reasonable. During this period, Defendant's expectation of privacy is very low. And though the State failed to present evidence showing the efficacy of SBM in solving sex crimes, it did present evidence showing SBM's efficacy in aiding the State in determining whether Defendant is violating the condition of his post-release supervision, that he remain within Catawba County. *See, e.g., State v. Griffin*, ___ N.C. App. ___, ___, 2020 N.C. App. LEXIS 139 at *17 (N.C. Ct. App. Feb. 20, 2020) (recognizing that a sex-offender's rights are "appreciably

diminished during his [] term of post-release supervision, that is not true for the remaining [term] of SBM imposed [after the post-release supervision terminates]").

We hold that the "for life" language contained in Section 14-208.40B is severable from the rest of that statute. It is, therefore, appropriate for us to affirm that portion of the trial court's order which imposes SBM under Section 14-208.40B for the remainder of the period that Defendant is subject to post-release supervision. Indeed, our Supreme Court has recognized that "if the invalid part [of a statute] is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out[.]" *State v. Fredell*, 283 N.C. 242, 245, 195 S.E.2d 300, 302 (1973). The Court explained that a provision is severable if the remaining provisions "are operative and sufficient to accomplish" the General Assembly's purpose in enacting the statute. *Id.* at 245, 195 S.E.2d at 302. We do not believe that it offends the General Assembly's purpose in enacting Section 208.40B if it is applied for some period less than a defendant's life. Rather, the General Assembly's purpose in enacting this Section is better served if SBM can be imposed for some period of time rather than not at all, where it has been determined that a defendant has committed an aggravated sexual offense and that the imposition for at least *some* period of time would not offend the Fourth Amendment. This situation is similar to a situation where a defendant commits a crime and is sentenced to a term that is later determined by a court to violate the Eighth Amendment's prohibition

against cruel and unusual punishments. In that situation, the reviewing court does not order the defendant released, but reduces the sentence to comply with the Eighth Amendment.

A. Reasonableness of the Search

The United States Supreme Court held that the imposition of SBM effects a continuous warrantless search. *Grady v. North Carolina*, 575 U.S. 306, 310, 191 L.Ed.2d 459, 462-63 (2015). But the Court noted that an SBM "search" is not necessarily unconstitutional. *Id.* at 310, 191 L.E.2d at 462-63. Rather, the imposition of SBM is unconstitutional only if it is unreasonable, and the Court held that the reasonableness of an SBM search is to be determined based on the "totality of the circumstances[.]" *Id.* at 310, 191 L.E.2d at 462-63. In considering the totality of the circumstances, the Court stated that a reviewing court is to consider, among other things, "the nature and purpose of the search" and "the extent to which the search intrudes upon reasonable expectations of privacy." *Id.* at 310, 191 L.E.2d at 462.

In the recent seminal case on our State's SBM program, our Supreme Court held that the imposition of SBM is unconstitutional as applied to a particular class of defendants: sexual offenders who are no longer under any form of post-release supervision, parole or probation and who meet the statutory definition of a "recidivist." *State v. Grady*, 372 N.C. 509, 545, 831 S.E.2d 542, 568-69 (2019). Though the holding was limited to a subset of unsupervised, convicted sex offenders, the

*Grady* holding appears to impose a high standard on the State to meet in order to show reasonableness when imposing SBM on *any* convicted sex offender who is not under any form of State supervision, mainly because of the high burden of showing the efficacy of SBM in helping solve future crimes.

In its analysis, though, our Supreme Court recognized that the calculus of reasonableness is different when a defendant *is* subject to State supervision. *See id.* at 526, 831 S.E.2d at 556 (differentiating its holding to cases where there is an "ongoing supervisory relationship between defendant and the State"). For instance, in the Conclusion section, the Court emphasized that its holding does not enjoin all of the SBM program's applications, in part, "because this provision *is still enforceable* against a [sex offender] during the period of his or her State supervision[.]" *Id.* at 547, 831 S.E.2d at 570 (emphasis added).

In the present case, the trial court concluded that the imposition of SBM would be reasonable and would be so for the remainder of Defendant's natural life. In support of its conclusion, the trial court found: that Defendant had been convicted of aggravated sexual offenses in 2007; that he was released in 2017; that he violated the terms of his post-release supervision by leaving Catawba County without notifying his parole/probation officer; that the SBM device is not overly intrusive; that the SBM

device monitors Defendant's location at all times; and that there does not currently exist any similar forms of monitoring available.[2]

Based on *Grady,* we must conclude that the trial court's imposition of SBM on Defendant *for any period beyond* his period of post-release supervision is unreasonable. For the following reasons, though, we conclude that the imposition of SBM *during* Defendant's post-release supervision period is reasonable.

1. Intrusion Upon Reasonable Privacy Interests- Nature of the Privacy Interest.

As our Supreme Court instructs in *Grady*, "the first factor to be considered is . . . the scope of the legitimate expectation of privacy at issue." *Id.* at 527, 831 S.E.2d at 557. The Court held that the defendant's expectation of privacy in *Grady* was only slightly more diminished than an average citizen's who had never committed a felony: "[E]xcept as reduced for possessing firearms and by providing certain specific information and materials to the sex offender registry, defendant's constitutional privacy rights, including his Fourth Amendment expectations of privacy, have been restored." *Id.* at 534, 831 S.E.2d at 561. In support of that proposition, the Court recognized that the expectation of privacy for a defendant who is still under a form of

---

[2] We note that the trial court also found that "the defendant admitted to sexually assaulting more than one minor child" prior to his conviction for the 2005 conduct *and* that he is currently facing charges for taking indecent liberties with a minor for alleged conduct which occurred recently when Defendant had left Catawba County without his parole/probation officer's knowledge. However, we caution that these "findings" are not findings that Defendant actually engaged in any other inappropriate sexual behavior beyond the 2005 incidents for which he was convicted in 2007. The trial court could have expressly found, by a preponderance of the evidence, that Defendant had engaged in other acts to support a determination that he is a recidivist, but the trial court did not do so.

State supervision is extremely low, but that one "enjoy[s] the full protection of the Fourth Amendment [once] probation ha[s] been discharged. *Id.* at 533, 831 S.E.2d at 561 (quoting *Trask v. Franco*, 446 F.3d 1036, 1043-44 (10th Cir. 2006)).

We, therefore, conclude that Defendant's expectation of privacy is presently significantly diminished and will remain so while Defendant continues to be under post-release supervision.

2. Intrusion Upon Reasonable Privacy Expectations -- Character of the Intrusion
Complained of

Our Supreme Court next analyzed "the character of the intrusion" which "contemplates the 'degree' of and 'manner' in which the search intrudes upon legitimate expectations of privacy." *Id.* at 534, 831 S.E.2d at 561.

The Court noted that the SBM device creates quite a burden on a defendant, certainly conflicting what the trial court in this case found concerning the burden of wearing an SBM device. The Court noted that the device "require[s] defendant to be tethered to a wall [each day for two hours so that the device can recharge] for what amounts to one month out of every year[.]" *Id.* at 536, 831 S.E.2d at 562-63.

While the intrusion is great, we conclude it is not as great as in *Grady* where the imposition is only for the remainder of the period that Defendant is subject to supervision.

We note our Supreme Court's statement that the lack of judicial oversight weighed heavily against the constitutionality of lifetime SBM in *Grady*. *Id.* at 535,

831 S.E.2d at 562. The Court pointed to the fact that the SBM statutes empower the Parole Commission to terminate a monitoring requirement early. *Id.* at 535, 831 S.E.2d at 562 (citing N.C. Gen. Stat. § 14-208.43(c)). However, we also note there is nothing in Section 14-208.43 which strips a trial court of any authority to entertain a motion to terminate the monitoring in the future before Defendant's post-release supervision period ends if it determines that the SBM "search" is no longer constitutionally reasonable. *See* N.C. Gen. Stat. § 14-208.43(d1).

### 3. Nature and Purpose of the Search

Having considered the extent of the intrusion of Defendant's expectation of privacy, we now balance that expectation "against the extent to which the SBM program sufficiently promotes . . . legitimate governmental interests to justify the search[.]" *Id.* at 538, 831 S.E.2d at 564 (internal quotation marks omitted) (citation omitted).

In *Grady*, the Court recognized that "solving crimes" is a legitimate purpose of SBM, but that the State in that case failed to show how the SBM program is effective "in apprehending or exonerating a suspected sex offender in North Carolina, or anywhere else [and, therefore, the] State's inability to produce evidence of the efficacy of the lifetime SBM program in advancing any of its asserted legitimate State interests weighs heavily against a conclusion of reasonableness here." *Id.* at 543, 831 S.E.2d at 567.

In the present case, though, there is a justification for SBM during Defendant's post-release supervision period, apart from any ability to help law enforcement determine whether Defendant is committing other *sex* crimes. SBM is effective in helping law enforcement determine whether Defendant is violating the condition of his post-release supervision that he remain in Catawba County. Indeed, the State did make an argument at the hearing regarding this efficacy in solving absconding violations and that this efficacy makes SBM reasonable during the period of post-release supervision.[3] The trial court, in its order, found that Defendant was under post-release supervision; that, as a condition, he could not leave Catawba County without permission; that he, in fact, did leave Catawba County without permission; and that the SBM device allows Defendant's probation/parole officer to detect Defendant's location at all times. We conclude that these findings are supported by the evidence presented at the hearing. We note that Defendant does not make any argument that these findings are not supported by the evidence.

---

[3] The State argued at the hearing that "[t]he testimony, even the defendant's own evidence, would indicate that he did, in fact, leave this county, went to Caldwell County without the permission of his probation officer. The probation officer indicated that if he was subjected to satellite-based monitoring, he would have known about that." The State further argued that "I realize that the physical observation in our county, as far as supervised probation, isn't for someone to keep eyes on this defendant at all times. It's a situation where the defendant has to report. A situation where the probation officer will go to the home. It is just not feasible to have somebody sit outside his home at all times and follow him around. That is not the type of resources that we have. But, with satellite-based monitoring, in some respects, it does the same thing as that, plus a little bit further. . . . I think [SBM] is reasonable in that the testimony was not all probation officers will have access to where this defendant is located [at all times]."

It may be that the State is unable to show that the imposition of SBM is effective in solving *sex* crimes in that most sex crimes are committed against known victims, such that the defense is not "I wasn't there," but rather "I was there, but that did not happen." But with absconding violations, the main issue to be proved is simply whether Defendant was in a place he was not allowed to be. Therefore, we conclude that the findings in the trial court's order establish that the imposing of SBM on Defendant in this case for the remainder of his post-release supervision furthers the State's interest in "solving crimes," specifically, whether Defendant has violated a condition of his post-release supervision by absconding.

4. Conclusion on Reasonableness of Search

The trial court had the statutory authority under Section 14-208.40B to impose SBM on Defendant for the rest of his life. However, this authority is curtailed by the Fourth Amendment requirement that individuals not be subject to unreasonable searches. We conclude that, based on the trial court's findings, *the extent* of the search imposed by the trial court under Section 14-208.40B was unconstitutional, but that such search is reasonable during the remainder of Defendant's post-release supervision. After this period of supervision, the imposition of SBM is no longer reasonable, as Defendant's expectation of privacy is too high and the State's

legitimate purpose in monitoring Defendant's location – to determine whether Defendant is absconding – is extinguished.[4]

## B. Facial Challenge

"A facial challenge is an attack on a statute itself as opposed to a particular application." *Los Angeles v. Patel*, 576 U.S. 409, ___, 192 L. Ed. 2d 435, 443 (2015). In a facial challenge, "a plaintiff must establish that a law is unconstitutional in all of its applications." *Id.* at ___, 192 L. Ed. 2d at 445 (internal quotation marks omitted) (citation omitted).

Defendant argues the State's SBM program is facially unconstitutional "because the State failed to demonstrate that SBM serves any legitimate governmental interest." Our Supreme Court in *Grady* declined to address the facial validity of the SBM statutes, holding only that the statutes were unconstitutional *as applied* to a particular class of defendants. In doing so, our Supreme Court noted, though, "the State's asserted interests here are without question legitimate." *Grady*, 372 N.C. at 543, 831 S.E.2d at 568.

> Our earlier conclusion that the nature of the State's concern was not beyond the normal need for law enforcement does not, of course, constitute a holding that the State's interest in solving crimes and facilitating apprehension of suspects so as to protect the public from sex offenders is not compelling. Sexual offenses are among the most disturbing and damaging of all crimes, and

---

[4] We note that *the Parole Commission* could have imposed SBM as a condition of post-release supervision under N.C. Gen. Stat. § 15A-1368.4(b1) (2018). However, in this case, SBM was imposed by *a trial court* in the context of a callback hearing pursuant to its authority under Section 14-208.40B.

> certainly the public supports the General Assembly's efforts to ensure that victims, both past and potential, are protected from such harm.

*Id.* at 538, 831 S.E.2d at 564 (citation and internal quotation marks omitted).

The General Assembly's enactments are presumed to be constitutional. Our Supreme Court recently decided the State's interests in the SBM statute are "without question legitimate." *Id.* at 543, 831 S.E.2d at 568. Defendant cannot show "the State failed to demonstrate that SBM serves a legitimate governmental interest." We conclude that the SBM is facially valid, at least to the extent that it can be applied to defendants under State supervision.

## C. General Warrant

Defendant argues that the imposition of SBM constitutes a general warrant, in violation of our North Carolina Constitution. We conclude, however, that the imposition of SBM on individuals who are otherwise under State post-release supervision does not violate our Constitution.

## V. Conclusion

We affirm the trial court's order to the extent that it imposes SBM on Defendant for the remainder of his post-release supervision. However, we reverse the trial court's order to the extent that the order imposes SBM *beyond* Defendant's period of post-release supervision. We remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judge TYSON concurs.

Judge BROOK concurs in result in part and dissents in part by separate opinion.

BROOK, Judge, concurring in the result in part and dissenting in part.

I concur in the result insomuch as the majority reverses the order imposing SBM beyond the time Defendant is subject to post-release supervision.  Otherwise, I respectfully dissent.  Controlling precedent requires full reversal of the SBM order at issue.

## I. Facts

Defendant was indicted for first-degree statutory rape and first-degree statutory sexual offense on 5 July 2005.  Defendant pleaded guilty to these charges on 26 April 2007 and was sentenced in the mitigated range to 144 to 182 months in prison.  The court considered, as a mitigating factor, among others, that "[D]efendant was suffering from a mental condition that was insufficient to constitute a defense but significantly reduced the defendant's culpability" and that Defendant possessed a "limited mental capacity[.]"

Defendant was released from prison on 9 July 2017 and placed on post-release supervision for a period of five years.  Probation Officer Travis Osborne was assigned to supervise Defendant.  Defendant began living with his sister, Kathy Owens, following his release.  While on post-release supervision, in April of 2018, Defendant was charged in Caldwell County with taking indecent liberties with a child.  The charges arose out of allegations made by Ms. Owens's minor granddaughter during an interview by a social worker and forensic interviewer.  The interviewer testified

that the minor alleged that Defendant "kissed her on the lips[,] [k]issed her on her forehead[,] . . . placed his hands down her . . . panties, . . . in her groin area and also her buttocks." She alleged that the conduct she described occurred at her home, which is located in Caldwell County.

Defendant was not permitted, under the conditions of his post-release supervision, to leave Catawba County. However, Ms. Owens testified that Defendant had traveled "a few times" to Caldwell County to help a family member repair a trailer. Ms. Owens testified that she was not aware of this condition of Defendant's post-release supervision, and that she believed Defendant did not know of this condition because "he has a hard time understanding and you have to talk to him in a lower level." Officer Osborne testified that Defendant signed a form acknowledging this condition of his post-release supervision.

During the pendency of Defendant's case in Caldwell County, the State initiated proceedings to enroll Defendant in SBM. A hearing was held on 19 April 2018 before the Honorable Daniel A. Kuehnert during the 16 April 2018 session of Catawba County Superior Court. The hearing was continued to 10 May 2018.

The State presented evidence regarding the operation of the device used to monitor an individual's location at the May 2018 hearing. Officer Osborne testified that the monitoring device is two inches wide and is worn on the ankle. He testified that the monitor sends a satellite signal to a private company that contracts with the

2

State to monitor offenders, and that the device "tracks every movement they make, [and] how long they're staying in one location." He further testified that the company shares that information with the offender's supervising officer. The State offered no testimony regarding in what form or how frequently the company shares location data with a supervising officer. Officer Osborne testified that the monitor is battery-operated and must be charged "at least two hours a day" to "stay fairly charged." While the monitor is being charged, the individual wearing it must be "within a cord's length of an outlet[.]" When the device loses its charge, it makes a sound to alert the wearer that can be heard up to 100 feet away.

At the hearing, the State did not present evidence regarding when the incident in Caldwell County was alleged to have occurred, nor did the State present evidence regarding whether the incident was alleged to have occurred during Defendant's first unauthorized trip to Caldwell County or during a subsequent trip. The State also did not present any evidence that SBM in general effectively prevents crime or assists the State in solving crimes.

The State did present testimony about what Officer Osborne "would have done . . . would [he] have known that [Defendant] was going to Caldwell County the first time he went to Caldwell County[.]" Officer Osborne testified that he "would have notified the Parole Commission and most likely requested that he be placed on the monitoring." He further testified that "[w]e could request a warrant for that;

3

however, I don't think the parole commission would have issued a warrant. That's why we would have requested that we added the conditions of being submitted to electronic monitoring." Counsel for the State and Officer Osborne had the following exchange:

> [PROSECUTOR]: [O]f course, you don't know which particular time he went to Caldwell County these allegations stemmed from?
>
> [OFFICER OSBORNE]: Right.
>
> [PROSECUTOR]: However, if he would have done it the first time, if at that time he had no contact with this girl, it was the first time he was in Caldwell County, you would have been able to stop him from going any further times?
>
> [OFFICER OSBORNE]: Correct.
>
> [PROSECUTOR]: And so hypothetically if the first time he went to Caldwell County he had no contact with this girl, then you possibly, if in fact an assault did occur, you might have been able to avoid that with satellite-based monitoring?
>
> . . .
>
> [OFFICER OSBORNE]: Yes.
>
> [PROSECUTOR]: Because you would have known he was leaving Catawba County and you would have intervened early on.
>
> [OFFICER OSBORNE]: Right.

Based on the evidence presented at the hearing, the trial court found that the offense of which Defendant was convicted in 2005 was an aggravated offense, and

therefore that Defendant fell into at least one of the categories subject to satellite-based monitoring under N.C. Gen. Stat. § 14-208.40. The trial court made the following additional findings:

> 1. That the defendant admitted to sexually assaulting more than one minor child prior to being convicted of first degree rape and first degree sexual offense.
>
> 2. That the defendant served a sentence of 15 years and two months for the crimes of first degree rape and first degree sexual offense.
>
> 3. That probable cause has been found to currently charge the defendant with the crime of taking indecent liberties with a minor.
>
> 4. That the defendant was charged with this crime just a couple months after being released from custody from serving his sentence for the crimes of first degree rape and first degree sexual offense.
>
> 5. That the alleged victim in the pending charge is related to one of the victim's [sic] associated with the defendant's previous convictions of first degree rape and first degree sexual assault [sic].
>
> 6. That the defendant has been monitored by probation and parole since his release from prison on July 9, 2017.
>
> 7. That one of the conditions of defendant's post release supervision is not to leave Catawba County without the permission of his probation/parole officer.
>
> 8. That the defendant has violated this condition of post release supervision and has traveled to Caldwell County without the knowledge of probation and parole.
>
> 9. That defendant's current charge of taking indecent

liberties with a minor is out of Caldwell County were [sic] the alleged victim lives.

10. That the satellite based monitoring program in Catawba County utilizes an ankle monitoring device to detect the location of one subject to satellite based monitoring through Global Positioning System.

11. That the ankle monitoring device is light weight, small in size, can be adjusted for comfort and is of little intrusion to the person wearing the device.

12. That the monitoring of this device is done by authorized personnel from probation and parole that are assigned to monitor a particular person subject to satellite based monitoring.

13. That there are safe guards [sic] in place to protect a person subject to satellite based monitoring in the case of an emergency or malfunction of the equipment.

14. That there are no known circumstances regarding this defendant that would cause a unique concern about his ability to wear the ankle monitoring device whether it be physical health, mental health, the defendant's occupation, the defendant's leisure or otherwise.

15. That there does not currently exist any other way for probation and parole to utilize satellite based monitoring other than the current practice of using an ankle bracelet.

16. That there does not exist currently any other form of monitoring available to probation and/parole [sic] other than physical monitoring similar to what is understood as supervised probation and satellite based monitoring as described above.

*BROOK, J., concurring in the result in part and dissenting in part*

Based on these findings, the trial court ordered Defendant to enroll in SBM for the remainder of his natural life.[5]

## II. Standard of Review

"An appellate court reviews conclusions of law pertaining to a constitutional matter de novo." *State v. Bowditch*, 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal marks and citation omitted).

## III. Legal Overview

Defendant argues that "[t]he trial court erred by ordering SBM in the absence of sufficient evidence from the State addressing why continuous GPS tracking of Mr. Hilton's every movement for life was a reasonable search under the federal and state constitutions." This constitutional claim is best construed as an as-applied challenge. Defendant further argues that "North Carolina's SBM program is unconstitutional on its face because the State failed to demonstrate that SBM serves any legitimate governmental interest."

I agree with Defendant that the State failed to meet its burden of proving that the SBM statute, as applied to Defendant, is a reasonable search under the Fourth Amendment. While there is no bright line between as-applied and facial challenges,

---

[5] Before turning to the analysis, it bears repeating that SBM was imposed in this instance solely pursuant to Article 27A of Chapter 14 of the General Statutes.

*see State v. Grady* , 372 N.C. 509, 546, 831 S.E.2d. 542, 569 (2019) ("*Grady III*"), a Court should "determine the constitutionality of a statute . . . only to the extent necessary to determine that controversy. It will not undertake to pass upon the validity of the statute as it may be applied to factual situations materially different from that before it." *Bulova Watch Co. v. Brand Distribs. of N. Wilkesboro, Inc.*, 285 N.C. 467, 472, 206 S.E.2d 141, 145 (1974). Our Court should therefore begin the inquiry with Defendant's as-applied challenge, which resolves the current controversy in his favor and renders consideration of his arguments as to facial unconstitutionality unnecessary.

To reach this conclusion, I first review the balancing test applicable to all Fourth Amendment controversies. I then consider how this balancing test operates in the particular case of North Carolina's SBM regime. Applying this background to the current controversy, I balance the nature and character of lifetime SBM's intrusion on Defendant's Fourth Amendment rights against the State's evidence that lifetime SBM of Defendant promotes its legitimate governmental interests. After careful consideration, I would hold that the absence of evidence supporting SBM's efficacy in this instance means that the State cannot justify this significant lifetime intrusion on Defendant's privacy interests.

A. Fourth Amendment Overview

*BROOK, J., concurring in the result in part and dissenting in part*

The Fourth Amendment "safeguard[s] the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Ct. of City & Cty. of San Francisco*, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730, 18 L. Ed. 2d 930, 935 (1967); *see also Schmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834, 16 L. Ed. 2d 908, 917 (1966) ("The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State."); *Riley v. California*, 573 U.S. 373, 403, 134 S. Ct. 2473, 2494, 189 L. Ed. 2d 430, 452 (2014) ("[T]he Fourth Amendment was the founding generation's response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity."). "[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness,'" which we judge "by balancing [the search's] intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests[.]" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652-53, 115 S. Ct. 2386, 2390, 132 L. Ed. 2d 564, 574 (1995) (citation omitted). When applying this balancing test in an as-applied challenge, "the determination whether a statute is unconstitutional as applied is strongly influenced by the facts in a particular case." *State v. Packingham*, 368 N.C. 380, 393, 777 S.E.2d 738, 749 (2015), *rev'd and remanded on other grounds*, ___ U.S. ___, 137 S. Ct. 1730, 198 L.Ed. 2d 273 (2017).

*BROOK, J., concurring in the result in part and dissenting in part*

### B. North Carolina's SBM Program

In recent years, our Courts have produced a robust jurisprudence surrounding our state's SBM regime. I briefly review that case law below.

The United States Supreme Court held in *Grady v. North Carolina* that satellite-based monitoring of a sex offender constitutes a search and therefore must comply with the reasonableness requirement of the Fourth Amendment. 575 U.S. 306, 309, 135 S. Ct. 1368, 1370, 191 L. Ed. 2d 459, 462 (2015) (per curiam). This decision overruled *State v. Grady*, 233 N.C. App. 788, 759 S.E.2d 712, 2014 WL 1791246 (2014) (unpublished) ("*Grady I*"), which relied on the premise that constant GPS monitoring of an individual did not constitute a search within the meaning of the Fourth Amendment. *Grady*, 575 U.S. at 309, 135 S. Ct. at 1370-71. The United States Supreme Court remanded the case for our Courts to determine the reasonableness of the imposition of lifetime SBM on the *Grady* defendant. *Id.* at 311, 135 S. Ct. at 1371.

While *State v. Grady*, 259 N.C. App. 664, 817 S.E.2d 18 (2018) ("*Grady II*"), was pending on remand, this Court held in 2017 that where the State fails to bring forward sufficient evidence to establish that the imposition of lifetime SBM constitutes a reasonable search compliant with the Fourth Amendment, the State shall not be "permitted to 'try again' by applying for yet another [SBM] hearing . . .

10

in the hopes of this time having gathered enough evidence." *State v. Greene*, 255 N.C. App. 780, 784, 806 S.E.2d 343, 345 (2017).

The following year, this Court decided *Grady II*. Despite the fact that "the SBM program had been in effect for approximately ten years[,] . . . the State failed to present any evidence . . . of the general procedures used to monitor" offenders through the program or "of its efficacy in furtherance of the State's undeniably legitimate interests." *Grady II* at 674-75, 817 S.E.2d at 27. Under such circumstances, the imposition of lifetime SBM on the defendant cannot constitute a reasonable search. *Id.* at 676, 817 S.E.2d at 28.

This Court then decided *State v. Griffin,* 260 N.C. App. 629, 818 S.E.2d 336 (2018) ("*Griffin I*"), holding that "unless SBM is found to be effective to actually serve the purpose of protecting against recidivism by sex offenders, it is impossible for the State to justify the intrusion of continuously tracking an offender's location for any length of time, much less for thirty years." *Id.* at 636, 818 S.E.2d at 341. As there was no such evidence presented, we held a trial court order requiring Defendant to enroll in long-term SBM violated the Fourth Amendment. *Id.* at 637, 818 S.E.2d at 342.

That same year, this Court held that the imposition of lifetime SBM following a defendant's release from prison, when the order imposing lifetime SBM comes at the beginning of a lengthy sentence, is unconstitutional without "an individualized

determination of reasonableness[.]" *State v. Gordon*, 261 N.C. App. 247, 261, 820 S.E.2d 339, 349 (2018) ("*Gordon I*"). Without such a showing that SBM served "the State's purpose of deterring future sexual assaults," the State failed to meet its burden. *Id.* at 260, 820 S.E.2d at 348.

Our Supreme Court then affirmed *Grady II* as modified in *Grady III*. 372 N.C. at 551, 831 S.E.2d at 572. The Court applied the Fourth Amendment reasonableness test to the imposition of lifetime SBM on the defendant, holding that North Carolina's mandatory SBM statutes are unconstitutional as applied to all defendants who are subject to such monitoring based solely on their status as recidivists. *Id.* It reached this conclusion because "the State ha[d] not met its burden of establishing the reasonableness of the SBM program under the Fourth Amendment balancing test required for warrantless searches." *Id.* at 544, 831 S.E.2d at 568. Integral to that determination was the State's failure to make "any showing . . . that the program furthers its interest in solving [sex] crimes that have been committed, preventing the commission of sex crimes, or protecting the public." *Id.* at 544-45, 831 S.E.2d at 568.

On the other side of the scale, *Grady III* made plain that it is difficult to overstate the intrusion on privacy interests visited upon individuals by SBM. *Grady III* instructed that SBM, which tracks the individual's location constantly, implicates an individual's right to be secure in his person, *id.* at 527-28, 831 S.E.2d at 557, and his house, *id.* at 528, 831 S.E.2d at 557, as well as his expectation of privacy in his

"physical location and movements[,]" *id.* (citation omitted). The Court compared the collection of SBM data to the government's accessing cell-site location information ("CSLI") in *Carpenter v United States*, ___ U.S. ___, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018). *Grady III*, 372 N.C. at 528, 831 S.E.2d at 557-58. However, the Court found that "[t]he SBM program presents even greater privacy concerns than the CSLI considered in *Carpenter* [because] [w]hile a cell phone . . . is almost a feature of human anatomy, the ankle monitor becomes, in essence, a feature of human anatomy[.]" *Id.* at 529, 831 S.E.2d at 558 (internal marks and citation omitted); *see also Carpenter*, ___ U.S. at ___, 138 S. Ct. at 2218 ("[W]hen the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user.").[6] And, of course, that near perfect government surveillance never ends in the case of lifetime SBM monitoring, with no meaningful review of its ongoing need. *Grady III*, 372 N.C. at 534-35, 831 S.E.2d at 562.

Our Court then decided *State v. Anthony*, ___ N.C. App. ___, 831 S.E.2d 905 (2019). Though filed four days after *Grady III*—meaning our Court did not have the opportunity to consider the Supreme Court's guidance in rendering our decision—

---

[6] Though generally consistent with our Court's opinion in *Grady II*, the Supreme Court parted company with the opinion below in characterizing the intrusiveness of SBM. *Grady III*, 372 N.C. at 535-36, 831 S.E.2d at 562-63 ("Mr. Grady, of course, must not only wear the half-pound ankle monitor at all times and respond to any of its repeating voice messages, but he also must spend two hours of every day plugged into a wall charging the ankle monitor. We cannot agree with the Court of Appeals that these physical restrictions, which require defendant to be tethered to a wall for what amounts to one month out of every year, are 'more inconvenient than intrusive.'") (quoting *Grady II*, 372 N.C. at 672, 817 S.E.2d at 25).

13

*Anthony* is very much of accord with the approach taken in *Grady III*. In *Anthony*, the State did argue for the efficacy of lifetime SBM based on various studies and statistics; however, it did not present the studies to the defendant, to the trial court, or include them in the record on appeal. *Id.* at ___, 831 S.E.2d at 909. The studies were thus not subject to judicial notice. *Id.* at ___, 831 S.E.2d at 909-10. Without such evidence or any other "evidence supporting the reasonableness of SBM as applied to [d]efendant," the imposition of lifetime SBM was unconstitutional. *Id.* at ___, 831 S.E.2d at 906. In balancing the State's legitimate interests against the defendant's privacy interest, our Court spoke plainly about how an absence of evidence of efficacy was fatal to the State's case:

> Even if we assume sex offenders in general do have a higher rate of recidivism than those convicted of other crimes, and even if a defendant in particular has an increased likelihood of reoffending, if there is no evidence that SBM actually prevents recidivism, the State cannot show that imposing a continuous, life-time search is reasonable under the Fourth Amendment of the United States Constitution.

*Id.* at ___, 831 S.E.2d at 907.

After *Grady III*, the Supreme Court reversed those SBM orders for defendants in the same offender group as Grady and remanded to our Court those cases the outcome of which was not directly controlled by the holding in *Grady III*. *See, e.g.*, Order, *State v. Dravis*, No. 305P18 (2019); Order, *State v. Griffin*, No. 270A18 (2019); Order, *State v. Gordon*, No. 312P18 (2019). Unsurprisingly, given the development

14

of the case law laid out above, our Court's SBM case law has continued along this same general trajectory since our Supreme Court's decision in *Grady III*.

First, upon remand from our Supreme Court, our Court again unanimously reversed the imposition of lifetime SBM in *State v. Dravis*, ___ N.C. App. ___, 837 S.E.2d 384 (2020). Despite the fact that the defendant fell outside the offender category involved in *Grady III*, the panel held the State had not carried its burden of establishing the search was reasonable under the Fourth Amendment. *Id.* at ___, 837 S.E.2d at 385. Writing for the panel, Judge Dillon noted the "*State did not provide sufficient evidence to show how the efficacy of SBM . . . furthered a legitimate interest of the State; e.g. to help solve sex offense crimes.*" *Id.* (emphasis added).

Our Court then again reversed the imposition of lifetime SBM in *State v. Griffin*, ___ N.C. App. ___, ___, 840 S.E.2d 267 (2020) ("*Griffin II*"), with one judge concurring in the result only. *Id.* at ___, 840 S.E.2d at 276. Our Court noted that the "[d]efendant's circumstances place him outside of the facial aspect of *Grady III*'s holding[,]" but applied the *Grady III* reasonableness analysis, noting that, "[a]though *Grady III* does not compel the result we must reach in this case, its reasonableness analysis does provide us with a roadmap to get there." *Id.* at ___, 840 S.E.2d at 273. Applying that analysis, our Court concluded that the State "fail[ed] to meet its burden [of] showing SBM's efficacy in accomplishing the State's professed aims" and

determined the order imposing 30 years of SBM was an unreasonable warrantless search in violation of the Fourth Amendment. *Id.* at ___, 840 S.E.2d at 276.

Our Court then again reversed the imposition of lifetime SBM in *State v. Gordon*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2020 WL 1263993, at *7 (2020) ("*Gordon II*"), with one judge concurring in the judgment. Applying the requisite analysis from *Grady III*, our Court concluded that the State failed to meet its burden of establishing that lifetime SBM after Defendant's eventual release from prison— some 15 to 20 years in the future—was a reasonable search. *Id.* at *6-7. We concluded that where the State "makes no attempt to distinguish th[e] undeniably important interest [in preventing sexual assaults] from the State's normal need for law enforcement[,]" *id.* at *6 (internal marks and citation omitted), the State fails to demonstrate "the government's need to search—i.e., the other side of the balancing test[,]" *id.* (citing *Grady III*, 372 N.C. at 527, 831 S.E.2d at 557).

Most recently, our Court invoked Rule 2 to address the merits of a defendant's appeal of the imposition of lifetime SBM in *State v. Graham*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2020 WL 1263994, at *11 (2020), and *State v. Ricks*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2020 WL 2121296, at *7 (2020). In both cases, our Court concluded that the State failed to meet its burden of establishing the reasonableness of SBM where the trial court failed to hold a *Grady* hearing and the State failed to produce any evidence of the reasonableness of the lifetime warrantless search.

*BROOK, J., concurring in the result in part and dissenting in part*

*Graham*, 2020 WL 1263994, at \*12; *Ricks*, 2020 WL 2121296, at \*10. Because the requisite *Grady* hearings were not held, the orders were vacated without prejudice to the State's re-filing in the trial. *Graham*, 2020 WL 1263994, at \*12 ("[T]he State has not yet had its 'first bite of the apple,' and vacatur of the SBM order with remand for an evidentiary hearing consistent with the most recent guidance from our Supreme Court in *State v. Grady* is appropriate.") (internal citation omitted); *Ricks*, 2020 WL 2121296, at \*10 (citing *State v. Bursell*, 258 N.C. App. 527, 813 S.E.2d 463 (2018), and *State v. Bursell*, 372 N.C. 196, 827 S.E.2d 302 (2019), for the proposition that vacatur with remand for hearing is the appropriate remedy where the trial court fails to hold a *Grady* hearing on the reasonableness of imposing SBM).

\* \* \* \* \* \* \* \*

"[I]t is axiomatic that 'the sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people. And it is clear that a legislature may pass valid laws to protect children and other victims of sexual assault from abuse.'" *Grady II*, 259 N.C. App. at 675, 817 S.E.2d at 27. It is also plain from the controlling case law that in assessing the validity of SBM's imposition, we balance the extent to which SBM effectively prevents sexual abuse against its "deep . . . intrusion upon [an] individual's protected Fourth Amendment interests." *Grady III*, 372 N.C. at 538, 831 S.E.2d at 564.

IV. Application

*BROOK, J., concurring in the result in part and dissenting in part*

A. Nature and Character of SBM's Intrusion on Defendant's Fourth Amendment Interests

While there is no doubt that Defendant's status as a sex offender diminishes his expectation of privacy in certain contexts, it "does not mean that the Fourth Amendment falls out of the picture entirely." *Id.* at 534, 831 S.E.2d at 561 (citation omitted). As a registered sex offender, Defendant must provide the State with certain "limited information concerning his address, employment, and appearance, in addition to his photograph and fingerprints[.]" *Id.* at 531, 831 S.E.2d at 560. But the provision of this information does not "greatly diminish [his] . . . expectation of privacy in *every context*." *Id.*, 831 S.E.2d at 559 (internal marks omitted) (emphasis added). Relatedly, there is a

> substantial difference[] between, on the one hand, an individual having to register his address, photograph, and other limited details pertaining to himself and the offense or offenses for which he was convicted with the sheriff and, on the other hand, an individual being required to wear an ankle appendage, which emits repeating voice commands when the signal is lost or when the battery is low, and which requires the individual to remain plugged into a wall every day for two hours[.]

*Id.* at 536-37, 831 S.E.2d at 563.

Defendant's expectation of privacy is further diminished given that he was on post-release supervision at the time of the SBM hearing. Though those subject to State supervision have a diminished expectation of privacy, *Samson v. California*, 547 U.S. 843, 852, 126 S. Ct. 2193, 2199, 165 L. Ed. 2d 250, 259 (2006), their expectation of privacy is not a nullity, *Grady III*, 372 N.C. at 534, 831 S.E.2d at 561.

Further, Defendant will not be supervised forever; thus, his current status does not mean his expectation of privacy will remain "severely diminished" throughout the course of his lifetime. *Samson*, 547 U.S. at 852, 126 S. Ct. at 2199; *see Grady III*, 372 N.C. at 555, 831 S.E.2d at 575; *Gordon I*, 261 N.C. App. at 259, 820 S.E.2d at 348 ("[T]he State's ability to establish reasonableness is [] hampered by the lack of knowledge concerning the future circumstances relevant to that analysis."). Simply put, "there is no precedent for the proposition that persons . . . who have served their sentences and whose legal rights have been restored to them . . . nevertheless have a diminished expectation of privacy in their persons and in their physical locations at any and all times of the day or night for the rest of their lives." *Grady III*, 372 N.C. at 533, 831 S.E.2d at 561.

The life-long, near perfect surveillance of SBM weighs against validity in the Fourth Amendment balancing test, even when considering individuals such as Defendant who will have an undoubtedly diminished expectation of privacy for some portion of their lives.

B. State's Evidence of SBM's Promotion of Legitimate Governmental Interests

Defendant argues that "the State failed to present evidence that the SBM program is effective at preventing recidivism." Our Court and our Supreme Court have addressed a similar dearth of evidence in, among others, *Grady III*, *Ricks*, *Gordon II*, *Graham*, *Griffin II*, *Dravis*, *Anthony*, *Gordon I*, *Griffin I*, *Grady II*, and

*Greene.* In each case in which the State failed to present any evidence of the efficacy of SBM in furthering the State's interests of protecting the public from sex offenders, and reducing recidivism, we have held the imposition of lifetime or long-term SBM to be unconstitutional. *See Grady III*, 372 N.C. at 521, 831 S.E.2d at 552-53 ("[T]he State failed to present any evidence of [SBM's] efficacy in furtherance of the State's undeniably legitimate interests.") (quoting *Grady II*, 259 N.C. App. at 675, 817 S.E.2d at 27); *Ricks*, 2020 WL 2121296, at *10 ("The State presented no evidence . . . regarding the reasonableness of the search[.]"); *Gordon II*, 2020 WL 1263993, at *6 ("[T]he State's evidence falls short of demonstrating what Defendant's threat of reoffending will be[.]"); *Graham*, 2020 WL 1263994, at *12 ("[T]he State notes that it presented no . . . data on the extent to which the program advances legitimate government interests."); *Griffin II*, ___ N.C. App. at ___, 840 S.E.2d at 276 (holding search unreasonable "given the State's failure to meet its burden showing SBM's efficacy in accomplishing the State's professed aims"); *Dravis*, ___ N.C. App. at ____, 837 S.E.2d at 385 (2020) ("[T]he State did not provide sufficient evidence to show how the efficacy of SBM [] furthered a legitimate interest of the State; e.g. to help solve sex offense crimes."); *Anthony*, ___ N.C. App. at ___, 831 S.E.2d at 907 ("[T]he State did not attempt to present any evidence or request judicial notice of any studies *regarding the actual efficacy of its SBM program in preventing recidivism*.") (emphasis in original); *Gordon I*, 261 N.C. App. at 260, 820 S.E.2d at 348 ("[T]he

State's evidence falls short of demonstrating what Defendant's threat of recidivating will be[.]"); *Griffin I*, 260 N.C. App. at 635, 818 S.E.2d at 340 ("[T]he State presented no evidence regarding the efficacy of the SBM program."); *Grady II*, 259 N.C. App. at 675, 817 S.E.2d at 27 ("[T]he State failed to present any evidence of [the SBM program's] efficacy in furtherance of the State's undeniably legitimate interests."); *Greene*, 255 N.C. App. at 782, 806 S.E.2d at 344 (noting that the State conceded that its "evidence was insufficient to establish that the enrollment constituted a reasonable Fourth Amendment search").

Here, the trial court made no findings of fact regarding the efficacy of the program in preventing or solving sex crimes. Nor did the State present any witnesses to testify that SBM is an effective law enforcement tool. As in *Grady III*, the State here presented no data or empirical studies to show that SBM is effective at preventing recidivism or deterring sex crimes. Nor did it request that the trial court take judicial notice of any studies or reports regarding the efficacy of SBM in reducing recidivism. The State also put forth no evidence regarding general recidivism rates of sex offenders to support the reasonableness of the intrusion. Similar to the case in *Grady III*,

> the State has not directed this Court to, nor are we aware of, a single instance dating back to the initial implementation of the SBM program in January 2007 in which the SBM program assisted law enforcement in apprehending or exonerating a suspected sex offender in North Carolina, or anywhere else.

21

372 N.C. at 542-43, 831 S.E.2d. at 567. In short, the State introduced no evidence of the SBM program's efficacy.

While the State put forth no evidence of the efficacy of SBM in general in deterring sex crimes and preventing recidivism, it did attempt to put forth evidence of the likelihood of SBM to prevent Defendant's own recidivism. It did so by attempting to illustrate how SBM *could* have prevented the conduct underlying Defendant's most recent charges. Counsel for the State asked Officer Osborne how the State might have responded to discovering through SBM that Defendant was traveling out of the county. Officer Osborne testified that he as the supervising officer could have notified the parole commission, but that the parole commission likely would not have issued a warrant. Officer Osborne testified that this is why the State would have sought to electronically monitor Defendant; however, the officer failed to explain how this would have furthered the State's interests.

The following exchange between counsel for the State and Officer Osborne captures the conjectural and conclusory nature of the State's evidence:

> [PROSECUTOR]: [O]f course, *you don't know* which particular time he went to Caldwell County these allegations stemmed from?
>
> [OFFICER OSBORNE]: Right.
>
> [PROSECUTOR]: However, *if he would have* done it the first time, *if* at that time he had no contact with this girl, it was the first time he was in Caldwell County, you *would*

*have been able* to stop him from going any further times?

[OFFICER OSBORNE]:  Correct.

[PROSECUTOR]:  And so *hypothetically* if the first time he went to Caldwell County he had no contact with this girl, then you *possibly*, if in fact an assault did occur, you *might have been able* to avoid that with satellite-based monitoring?

. . .

[OFFICER OSBORNE]:  Yes.

(Emphasis added.)

Even if this evidence factored into the trial court's findings in supporting lifetime SBM—which it appears to have not, given that the trial court made no findings of fact regarding this testimony—it does not provide the requisite evidence "*regarding the actual efficacy of* [*the State's*] *SBM program in preventing recidivism.*" *Anthony*, ___ N.C. App. at ___, 831 S.E.2d at 907 (emphasis in original).  Beyond the leading questions and unexplained affirmative response from Officer Osborne, the State offered no evidence for how monitoring could have prevented Defendant's alleged assault or in what form or how frequently the State might receive Defendant's location information.  Though the State's assertion of efficacy appears to be predicated on some State intervention, what that entails is left unexplained.  This is insufficient to carry the State's burden.  *See Grady II*, 259 N.C. App. at 675, 817 S.E.2d at 27-28 (holding that the State did not meet its burden of proving the efficacy

of SBM where it failed to present any evidence concerning how the procedures used to monitor offenders could protect the public).

The little evidence offered seems to undermine the conclusory assertion of efficacy rather than support it. Implicit in the above questioning is an acknowledgement that SBM could not have prevented an assault that occurred on Defendant's first unauthorized trip to Caldwell County. And Officer Osborne testified that he did not think that the parole commission would have issued a warrant had the State learned of Defendant's unauthorized travel, calling into question whether subsequent trips to Caldwell County could have been prevented or would have resulted in any consequences. Further, the State presented no evidence—and the trial court made no findings—indicating SBM could have served a crime-solving purpose. Finally, no findings or evidence offer any support for the efficacy of or need for the *lifetime* monitoring imposed here.

To its credit, the majority opinion acknowledges that the State has failed here to make "any showing . . . that the program furthers its interest in solving [sex] crimes that have been committed, preventing the commission of sex crimes, or protecting the public." *Grady III*, 372 N.C. at 545, 831 S.E.2d at 568. But the majority then asserts that "there is a justification for SBM during Defendant's post-release supervision period, apart from any ability to help law enforcement determine whether Defendant is committing other *sex* crimes. SBM is effective in helping law enforcement

determine whether Defendant is violating the terms of his post-release supervision by traveling outside Catawba County without permission." *Hilton, supra* at ___ (emphasis in original). This approach does not withstand scrutiny.

First, there is no support for the majority's assertion that an interest in preventing defendants from absconding has been used to or can in fact justify the State's SBM program. At oral argument before the Supreme Court in *Grady III*, the State fully embraced the justification the majority rejects today:

> Q: Just so I look at this correctly, what does the State contend the *specific purpose* of this program is?
>
> A: The *specific purpose* of this program is to allow law enforcement to be able to *investigate and quickly apprehend sex offenders* to protect the public from sex offenders.

372 N.C. at 526 n.13, 831 S.E.2d at 556 n.13 (emphasis in original). The State has taken the same tack throughout this case, again without reference to absconding; the majority does not deign to explain why its absconding argument is properly before us. *See, e.g., United States v. Sineneng-Smith*, ___ U.S. ___, ___, ___ S. Ct. ___, ___, ___ L. Ed. 2d ___, ___, 2020 WL 2200834, at *3 (2020) (vacating and remanding "for an adjudication of the appeal attuned to the case shaped by the parties rather than the case designed by the appeals panel"); *State v. Hardy*, 242 N.C. App. 146, 152 n.2, 774 S.E.2d 410, 415 n.2 (2015) (treating as abandoned issue that neither the State nor

the defendant raised on appeal) (citing N.C. R. App. 28(a)).[7] And, in our Court's first post-*Grady III* decision, Judge Dillon, writing for a unanimous panel, reversed an SBM order because *"[t]he State did not provide sufficient evidence to show how the efficacy of SBM [] furthered a legitimate interest of the State; e.g. to help solve sex offense crimes."* *Dravis*, ___ N.C. App. at ___, 837 S.E.2d at 385 (emphasis added). Not only did absconding go unmentioned in *Dravis*, but also it has not merited mention in any opinion, be it majority, concurring, concurring in the result, or dissenting, in *Grady III*, *Ricks*, *Gordon II*, *Graham*, *Griffin II*, *Dravis*, *Anthony*, *Gordon I*, *Griffin I*, *Grady II*, and *Greene*. This track record does nothing to suggest that absconding is a justification for the State's seeking to impose SBM, let alone one deemed persuasive by our Courts.

---

[7] The majority suggests that the State sought to justify the imposition of SBM via an absconding argument at the trial court; this is not so. While the State did argue that SBM would have allowed the probation officer to know if Defendant went to Caldwell County, this was not presented as an end in itself. Instead, as was also the case before our Supreme Court in *Grady III*, the State's trial court argument focused on the asserted usefulness of this information in relation to a sex crime. The pertinent quote presented by the majority in its fuller context bears this out:

> The testimony, even defendant's own evidence, would indicate that he did, in fact, leave this county, went to Caldwell County without permission of his probation officer. The probation officer indicated that if he was subjected to satellite-based monitoring, he would have known about that.
>
> I think you're right, Your Honor, we don't know *if that would have prevented this crime* or not, but the possibility is that it could have.

Even if it were true, the majority's assertion does not change the fact that the State has not argued absconding as a justification on appeal nor, as discussed below, that it has never been countenanced as an interest of sufficient weight to carry the State's burden in imposing SBM.

*BROOK, J., concurring in the result in part and dissenting in part*

And the majority seems to know its creation only bears so much weight, acknowledging it can only justify SBM while a defendant is on post-release supervision. This, however, raises another problem: the statute through which SBM was imposed here refers only to "satellite-based monitoring *for life*." N.C. Gen. Stat. § 14-208.40B(c) (2019) (emphasis added). The majority circumvents this obstacle by rewriting the statute. It begins by rightly noting that there are occasions where our courts have recognized an invalid portion of a statute can be "stricken out" while the "constitutional [portion] may stand." *State v. Fredell*, 283 N.C. 242, 245, 195 S.E.2d 300, 302 (1973). But the majority does not merely strike through "for life" but also adds a wholly different temporal frame, "so long as the offender is on post-release supervision" or some equivalent, to the statute in question. As Justice Scalia correctly noted, this is not our place: "The problem with this approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add words to the law to produce what is thought to be a desirable result. That is [the legislature's] province." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, ___ U.S. ___, ___, 135 S. Ct. 2028, 2033, 192 L. Ed. 35, 42 (2015). And the legislature already allows the State to seek to impose SBM for the duration of a defendant's post-release supervision through a statute not employed here, N.C. Gen. Stat. § 15A-1368.4(b1)(7). *See Griffin II*, ___ N.C. App. at ___, 840 S.E.2d at 274 ("The thirty years of SBM at issue in this appeal is unrelated to the State's post-release supervision of Defendant. . . .

27

Defendant has not contested the imposition of SBM as a condition of post-release supervision but has instead appealed an entirely different search lasting six times the length of his supervisory relationship with the State."). Though we may wish SBM had been imposed as a condition of post-release supervision, we cannot change the fact that it was instead imposed for life by rewriting N.C. Gen. Stat. § 14-208.40B(c) to produce the desired result.

The trial court did not find and the record provides no basis for concluding SBM would have advanced the State's undoubtedly legitimate interests here. Our courts have long required something more concrete than the conjectural and conclusory testimony proffered here by the State to justify the intrusion of warrantless SBM. *See Griffin I*, 260 N.C. App. at 635, 818 S.E.2d at 341 (holding the State cannot meet its burden of proof with a "lack of data, social science or scientific research, legislative findings, or other empirical evidence" by instead "appeal[ing] to anecdotal case law, as well as to logic and common sense") (internal marks and citation omitted); *Anthony*, ___ N.C. App. at ___, 831 S.E.2d at 910 (holding imposition unconstitutional where "State presented no evidence regarding the *efficacy* of SBM") (emphasis in original). The State's failure to carry its burden necessitates reversal of the trial court's SBM order here. *Greene*, 255 N.C. App. at 784, 806 S.E.2d at 345 (reversing SBM order because, where the State has failed to

meet its burden of proving reasonableness in a *Grady* hearing, it is not permitted to "try again" in a new hearing).

## V. Conclusion

Our binding precedent is clear:  the Fourth Amendment protects an individual's reasonable expectations of privacy.  Reasonableness turns on balancing a search's promotion of legitimate governmental interests against its intrusion.  "We cannot simply assume that the program serves its goals and purposes" in weighing the State's interests.  *Grady III*, 372 N.C. at 544, 831 S.E.2d at 568.  And here the State failed to bring forward any evidence that SBM would serve its stated purpose of protecting the public.  On the other side of the scale, *Grady III*, as well as its many predecessor and successor cases, establish that "[t]he SBM program constitutes a substantial intrusion into [protected] privacy interests[.]"  *Id.* at 544-45, 831 S.E.2d at 568.  While diminished for a time in the case of individuals like Defendant, these interests are never a nullity.

I respectfully concur in the result in part and dissent in part.