IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-681

No. COA17-386-3

Filed 18 October 2022

Craven County, No. 03 CRS 53794

STATE OF NORTH CAROLINA

v.

THOMAS EARL GRIFFIN, Defendant.

Appeal by Defendant from order entered 1 September 2016 by Judge Benjamin G. Alford in Craven County Superior Court. Heard in the Court of Appeals 19 September 2017 and opinion filed 7 August 2018. Remanded to this Court by order of the North Carolina Supreme Court for further consideration in light of *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019). Heard in this Court on remand on 8 January 2020 and opinion filed 18 February 2020. Remanded to this Court by order of the North Carolina Supreme Court on 14 December 2021 for reconsideration in light of *State v. Hilton*, 378 N.C. 692, 2021-NCSC-115, *State v. Strudwick*, 379 N.C. 94, 2021-NCSC-127, and 2021 N.C. Sess. Laws. ch. 138, § 18. Heard in the Court of Appeals on remand.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph Finarelli, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for Defendant-Appellant.*

INMAN, Judge.

¶ 1      In this decision, we address, for the third time, whether the imposition of satellite-based monitoring ("SBM") for a term of thirty years violates Defendant Thomas Earl Griffin's rights under the Fourth Amendment to the United States Constitution. After careful review, and in light of *State v. Hilton*, 378 N.C. 692, 2021-NCSC-115, *State v. Strudwick*, 379 N.C. 94, 2021-NCSC-127, and the North Carolina General Assembly's revisions to the SBM program, 2021 N.C. Sess. Laws ch. 138, § 18, we affirm the trial court's SBM order.

## I.      FACTUAL AND PROCEDURAL HISTORY

### A. Defendant's Conviction, SBM Order, and Initial Appeal

¶ 2      This Court summarized the pertinent underlying facts in our earlier decisions, *State v. Griffin,* 260 N.C. App. 629, 629-33, 818 S.E.2d 336, 337-39 (2018) ("*Griffin I*"), and *State v. Griffin*, 270 N.C. App. 98, 99-101, 840 S.E.2d 267, 269-70 (2020) ("*Griffin II*"). Per our recitation of the facts in those opinions:

> In 2004, Defendant entered an *Alford* plea to one count of first-degree sex offense with a child. *Griffin I*, 260 N.C. App. at 629–33, 818 S.E.2d at 337. At sentencing, Defendant admitted to the digital and penile penetration of his girlfriend's minor daughter over the course of three years. *Id.* at 630–31, 818 S.E.2d at 338. The trial court sentenced Defendant to imprisonment for 144 to 182 months and recommended the completion of SOAR, a sex offender treatment program. *Id.*
>
> Eleven years after his conviction, in 2015, Defendant was

released from prison on a five-year term of post-release supervision. *Id.* Three months later, the State sought SBM of Defendant under N.C. Gen. Stat. § 14-208.40(a)(2), as he had been sentenced for a reportable sex offense as defined by N.C. Gen. Stat. § 14-208.6(4) and therefore could be subject to SBM if ordered by a court. *Id.*

Defendant appeared before the trial court at a "bring-back" hearing in August 2016, where a "Revised STATIC-99 Coding Form" ("Static-99"), prepared by the Division of Adult Correction and Juvenile Justice and designed to estimate the probability of recidivism, was entered into evidence. *Id.* According to the Static-99, Defendant presented a "moderate-low" risk, the second lowest of four possible categories. *Id.*

The State called Defendant's parole officer as a witness, who testified that Defendant failed to complete the SOAR program but had not violated any terms of his post-release supervision. *Id.* The officer also described the physical characteristics and operation of the SBM device. *Id.* The State did not introduce any evidence regarding how it would use the SBM data or whether SBM would be effective in protecting the public from potential recidivism by Defendant. *Id.*

After taking the matter under advisement, the trial court entered a written order imposing SBM on Defendant for thirty years. *Id.* at 630–33, 818 S.E.2d at 338-39. That order included the following findings of fact and conclusion of law:

> 1. The defendant failed to participate in and[/]or complete the SOAR program.
>
> 2. The defendant took advantage of the victim's young age and vulnerability: the victim was 11 years old [while] the defendant was 29 years old.
>
> 3. The defendant took advantage of a position of

> trust; the defendant was the live-in boyfriend of the victim's mother. The family had resided together for at least four years and [defendant] had a child with the victim's mother.
>
> 4. Sexual abuse occurred over a three year period of time.
>
> The court has weighed the Fourth Amendment right of the defendant to be free from unreasonable searches and seizures with the publics [sic] right to be protected from sex offenders and the court concludes that the publics [sic] right of protection outweighs the "de minimis" intrusion upon the defendant's Fourth Amendment rights.
>
> *Id.* at 631–32, 818 S.E.2d at 339.

*Griffin II*, 270 N.C. App. at 99-101, 840 S.E.2d at 269-70.

¶ 3        The above facts, coupled with this Court's then-binding decision in *State v. Grady*, 259 N.C. App. 664, 817 S.E.2d 18 (2018) ("*Grady II*"), led us to reverse the SBM order in *Griffin I* "because the State failed to present any evidence that SBM is effective to protect the public from sex offenders." 260 N.C. App. at 637, 818 S.E.2d at 342.

## B. *Grady III* and *Griffin II*

¶ 4        The State appealed our decision in *Griffin I* and, while that appeal was pending, our Supreme Court modified and affirmed *Grady II* in *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019) ("*Grady III*"). *Grady III* applied a three-factor totality of the circumstances test to determine the reasonableness of lifetime SBM and held

that lifetime SBM under the statutes then in effect was unconstitutional as to all offenders who were not subject to probation and were enrolled in SBM solely on the basis of recidivism. 372 N.C. at 511, 831 S.E.2d at 546-47. The State's appeal of *Griffin I* was subsequently dismissed, and our Supreme Court remanded the matter to this Court for reconsideration in light of *Grady III*. *State v. Griffin*, 372 N.C. 723, 839 S.E.2d 841 (2019).

¶ 5        On remand, we recognized that because Defendant did not receive lifetime SBM as a result of any recidivist status, "*Grady III* does not compel the result we must reach in this case, [but] its reasonableness analysis does provide us with a roadmap to get there." *Griffin II*, 270 N.C. App. at 106, 840 S.E.2d at 273. Our application of *Grady III*'s Fourth Amendment analysis to the particular facts of Defendant's case led us to again hold that the SBM order failed to pass constitutional muster under the totality of the circumstances. *Id.* at 110, 840 S.E.2d at 276.

## C. *Hilton*, *Strudwick*, and Legislative Changes to SBM

¶ 6        The State appealed our decision once more, and, as in the appeal of *Griffin I*, the SBM landscape shifted while the matter was pending before the Supreme Court. First came *Hilton*, in which our Supreme Court declined to extend *Grady III* to other categories of defendants and held that the imposition of lifetime SBM on aggravated offenders was constitutional. *Hilton*, ¶ 36; *see also State v. Carter*, 2022-NCCOA-262, ¶ 18 (recognizing that "our Supreme Court narrowly construed *Grady III*'s holding"

in *Hilton*). Then our Supreme Court decided *Strudwick*, which reaffirmed the narrow application of *Grady III* to hold that, under the three-step reasonableness inquiry "enunciated in *Grady III* [ ] and further developed in *Hilton*," *Strudwick*, ¶ 20, lifetime SBM was constitutional for another aggravated offender, *id.* ¶ 28.

As elsewhere recognized by this Court, *Strudwick* also announced two other important points of law:

> First, the Supreme Court clarified the reasonableness determination takes place in the present, not the future.
>
> . . . .
>
> The second relevant additional aspect of *Strudwick* is its discussion on how to reevaluate SBM orders as time moves forward and circumstances change. *Strudwick*, ¶¶ 15–17. *Strudwick* indicates a defendant could file a petition under Rule 60 of the North Carolina Rules of Civil Procedure on the grounds "it is no longer equitable that the judgment should have prospective application" or "[a]ny other reason justifying relief from the operation of the judgment." *Id.*, ¶ 16 (quoting N.C. Gen. Stat. § 1-1A, Rule 60(b)(5)–(6) (2019)); *see also id.*, ¶ 17 (further explaining how subsections (5) and (6) could provide paths to relief). The Supreme Court also noted a defendant could file a petition under North Carolina General Statute § 14-208.43 (2019). *Strudwick*, ¶ 15.

*State v. Anthony*, 2022-NCCOA-414, ¶¶ 17-18.

The General Assembly also made substantial revisions to our SBM statutes while the State's appeal of *Griffin II* was pending. Under the statutes now in effect, "[a]n offender who was ordered prior to December 1, 2021, to enroll in [SBM] for a

period longer than 10 years may file a petition for termination or modification of the monitoring requirement with the superior court in the county where the conviction occurred." N.C. Gen. Stat. § 14-208.46(a) (2021). Then, "[i]f the petitioner has not been enrolled in the [SBM] program for at least 10 years, the court shall order the petitioner to remain enrolled in the [SBM] program for a total of 10 years." *Id.* § 14-208.46(d). Alternatively, "[i]f the petitioner has been enrolled in the [SBM] program for more than 10 years, the court shall order the petitioner's requirement to enroll in the [SBM] program be terminated." *Id.* § 14-208.46(e). In short, "[c]ombined with a change setting a ten-year maximum on new SBM enrollments, the statutory system now limits SBM to ten years for all offenders." *Anthony,* ¶ 19 (citations omitted).

¶ 9        On 14 December 2021, our Supreme Court again declined to take the State's appeal of *Griffin II* on the merits and, instead, remanded the matter to this Court for reconsideration in light of *Hilton, Strudwick*, and the General Assembly's changes to the SBM statutes. *State v. Griffin*, 379 N.C. 671, 865 S.E.2d 849.

## II.  <u>ANALYSIS</u>

¶ 10        Consistent with the Supreme Court's order, we now consider Defendant's challenge to the constitutionality of the trial court's order imposing SBM for a term of thirty years in light of *Hilton, Strudwick*, and the revised SBM statutes. We also have the benefit of this Court's recent decisions in *Carter* and *Anthony*, which undertook the same effort in the context of aggravated offenders subject to lifetime

SBM. Recognizing that Defendant is neither a recidivist nor an aggravated offender and is subject to SBM for a term of years rather than life, we nonetheless hold that, in light of the foregoing legal developments, including binding precedent, the SBM order imposed by the trial court is constitutionally reasonable under the totality of the circumstances.

**A. Standards of Review**

¶ 11 The standards of review to be applied in this case are well-settled: "Reviewing a trial court order, we consider whether the trial judge's underlying findings of fact are supported by competent evidence, . . . and whether those factual findings in turn support the judge's ultimate conclusions of law. We review a trial court's determination that SBM is reasonable *de novo*." *Carter*, ¶ 14 (quotation marks and citation omitted); *see also Griffin I*, 260 N.C. App. at 633, 818 S.E.2d at 339-40. Unchallenged findings of fact are binding on appeal. *Strudwick*, ¶ 24.

**B. Reasonableness under the Totality of the Circumstances**

¶ 12 Whether the trial court's SBM order is constitutional hinges on the same three-part reasonableness analysis employed in *Grady III*, "further developed in *Hilton*," and applied in *Strudwick*. *Id.* ¶ 20. Under that test, we consider: "(1) the legitimacy of the State's interest; (2) the scope of Defendant's privacy interests; and (3) the intrusion imposed by SBM." *Anthony*, ¶ 33 (citing *Hilton*, ¶¶ 19, 29, 32). We then weigh those factors under the totality of the circumstances to discern whether the

SBM order imposed by the trial court is reasonable under the Fourth Amendment. *Id.*

### 1. *State's Interests*

Our precedents have recognized numerous state interests served by SBM, including "preventing and prosecuting future crimes committed by sex offenders." *Strudwick*, ¶ 26. The legitimacy of those interests is beyond dispute. *See Grady III*, 372 N.C. at 543, 831 S.E.2d at 568 ("[T]he State's asserted interests here are without question legitimate."); *Hilton*, ¶ 29 ("[T]he SBM program serves a legitimate government interest."); *Strudwick*, ¶ 23 ("The purposes of the SBM program—to assist the State in both preventing and solving crime—are universally recognized as legitimate and compelling." (citations omitted)).

We recognized these legitimate interests in *Griffin II* but held that, consistent with *Grady III*, those interests did not weigh in favor of SBM because the State "failed to carry its burden to produce evidence that the thirty-year term of SBM imposed in this case is effective to serve [those] legitimate interests." 270 N.C. App. at 109, 840 S.E.2d at 275. We now diverge from that holding in part because our Supreme Court made clear in *Hilton* and *Strudwick* that *Grady III*'s evidentiary analysis, like its ultimate holding, is strictly limited to the category of offenders addressed by that decision. *See Hilton*, ¶ 23 n.5 ("[O]ur analysis in [*Grady III*] has no bearing on cases where lifetime SBM is imposed on sexually violent offenders, aggravated offenders,

or adult-child offenders."); *id*. ¶ 28 ("Since we have recognized the efficacy of SBM in assisting with the apprehension of offenders and in deterring recidivism, there is no need for the State to prove SBM's efficacy on an individualized basis."); *Strudwick*, ¶ 20 (holding that because the defendant received SBM for an aggravated offense, "the holding of *Grady III* concerning the unconstitutionality of North Carolina's lifetime SBM scheme as it applies to recidivists, including *Grady III*'s discussion concerning the State's burden of proof as to the effect of lifetime SBM on reducing recidivism, is wholly inapplicable to the instant case."). As the most recent precedents from our Supreme Court concerning the constitutionality of SBM, we are bound to follow *Hilton*'s and *Strudwick*'s unambiguous limitation of *Grady III*'s efficacy analysis to recidivists alone.

¶ 15 Notwithstanding the absence of direct efficacy evidence presented to the trial court in this case, SBM's ability to deter and assist in solving crimes is otherwise established by: (1) legislative enactment, *see Strudwick*, ¶ 26 (discussing legislative findings in support of SBM's efficacy); (2) the fact that "location information from the monitor could be used to implicate the participant as a suspect if he was in the area of [a reported] sexual assault, or to eliminate him as a suspect if he was not in the area," *Hilton*, ¶ 26; and (3) "by empirical data," *id*. ¶ 28.

¶ 16 We further note that Defendant was convicted of sexually abusing a minor, and *Hilton* held that the State need not demonstrate efficacy before the trial court in part

because "the General Assembly has clearly stated the purpose of North Carolina's 'Sex Offender and Public Protection Registration Programs' is to proactively protect *children* and others from dangerous sex offenders." *Hilton*, ¶ 22 (quoting N.C. Gen. Stat. § 14-208.5 (2019) (emphasis added)). Indeed, the Supreme Court in *Hilton* acknowledged that the General Assembly "enacted the SBM program . . . to further its paramount interest in protecting the public—especially children . . . . 'The General Assembly also recognized . . . that the protection of sexually abused children is of great governmental interest.' " *Id.* ¶ 19 (quoting N.C. Gen. Stat. § 14-208.5 (2019) (cleaned up)). It also pointed out that this state interest was served by imposing SBM on "narrowly defined categories of sex offenders who present a significant enough threat of reoffending to 'require[] the highest possible level of supervision and monitoring.' " *Id.* ¶ 23 (quoting N.C. Gen. Stat. § 14-208.40(a) (2019)). Here, Defendant was convicted of a sex crime against an 11-year-old and was found by the trial court to "require[] the highest possible level of supervision and monitoring."

¶ 17 We are unconvinced by Defendant's arguments that the record before us affirmatively disproves SBM's efficacy. Defendant first contends that because his STATIC-99 showed he was a "Moderate-Low" risk to reoffend, any recidivist concerns are absent here. However, as the State points out, Defendant did not complete the SOAR program designed to reduce recidivism. The State further notes that the

defendant in *Strudwick* fell into the same STATIC-99 risk category as Defendant,[1] and our Supreme Court held that the State's interest in preventing recidivism was served by lifetime SBM in that case. *Strudwick*, ¶¶ 7, 26-28. We reject Defendant's first argument for these reasons.

¶ 18    Defendant's second argument against a favorable weighing of the State's interest—that the particulars of his crime are unlikely to be repeated—fares no better than his first. We rejected an identical contention in *Anthony*:

> Defendant misconstrues the nature of the State's interest. Defendant assumes the State's interest is in preventing or prosecuting the crime which triggered SBM (or a repeat of the same scenario), but the State's interest is broader. It encompasses all potential future sex crimes. *See, e.g., Hilton*, ¶ 21 (defining interest as "protecting children and others from sexual attacks" without limitation) (quotations, citation, and alterations omitted). Thus, as long as SBM could prevent or solve a future sex crime, regardless of the exact facts of that scenario, the State's

---

[1] We take judicial notice of the Court of Appeals and Supreme Court records in *Strudwick* for purposes of comparing Defendant's STATIC-99 to the updated STATIC-99 form reviewed in *Strudwick*. *See Hilton*, ¶ 26 (taking judicial notice of a finding of fact in *Strudwick* for purposes of its SBM analysis as another record of the Court); *West v. G. D. Reddick, Inc.*, 302 N.C. 201, 203, 274 S.E.2d 221, 223 (1981) (taking judicial notice of facts in a Court of Appeals decision because both courts "constitute the appellate division of the General Court of Justice" and the judicially noted facts were "capable of demonstration by readily accessible sources of indisputable accuracy" and "important" to resolution of the appeal). Here, Defendant scored a "2," in the "Moderate-Low" risk category, on his STATIC-99. The defendant in *Strudwick* scored a "3," or "Average Risk," on an updated STATIC-99. Under the older form, scores of 2 and 3 are deemed "Moderate-Low" risk, while the newer form in *Strudwick* groups scores of 1, 2, and 3 into the "Average Risk" category. The updated form in *Strudwick* did not alter the underlying formula for calculating risk scores. Thus, Defendant and the defendant in *Strudwick* fall into the same recidivism risk category regardless of which STATIC-99 form is used.

interest is served.

*Anthony*, ¶ 38. Consistent with *Anthony*, and because Defendant's arguments fail to undercut the State's demonstrated and legitimate interest in preventing future sex crimes, we hold that those interests weigh in favor of SBM.

### 2. *Defendant's Privacy Interests*

¶ 19 The second reasonableness factor requires us to examine "the scope of Defendant's privacy interest." *Id.* ¶ 39. In *Grady III*, our Supreme Court held that recidivists enjoy "restored" privacy rights and liberty interests with exceptions for gun possession and the "provi[sion] [of] certain specific information and materials to the sex offender registry." 372 N.C. at 534, 831 S.E.2d at 561. We followed that observation—as the most recent SBM analysis from our Supreme Court—in *Griffin II* to hold that Defendant's privacy rights would be similarly restored after his term of post-release supervision. 270 N.C. App. at 107, 840 S.E.2d at 274.

¶ 20 However, *Hilton* and *Strudwick* have since signaled that such restoration is more limited for offenders who fall outside the recidivist category. *See Strudwick*, ¶ 21 ("[D]efendant's expectation of privacy is duly diminished by virtue of his status as a convicted felon generally and as a convicted sex offender specifically." (citing *Hilton*, ¶ 30)). Under these more recent precedents:

> [I]t is constitutionally permissible for the State to treat a sex offender differently than a member of the general population as a result of the offender's felony conviction for

> a sex offense. *Hilton*, 2021-NCSC-115, ¶ 30. Concomitantly, a sex offender such as defendant possesses a constitutionally permissible reduction in the offender's expectation of privacy in matters such as the imposition of lifetime SBM.

*Id.* ¶ 22. These decisions further reasoned that: (1) "individuals convicted of sex offenses may be permanently barred from certain occupations," *Hilton*, ¶ 30; (2) sex offender registration extends beyond the term of post-release supervision; and (3) such registration imposes additional "limitations on [sex offenders'] movements and residency restrictions," *id.* ¶ 31.[2]

To be sure, Defendant is not an aggravated offender and thus is not squarely within the category addressed by *Hilton* and *Strudwick*. But the particular facts of Defendant's crime—involving an adult perpetrator and child victim—further suggest that he has a measurably diminished expectation of privacy more akin to aggravated offenders than not. For example, *Hilton* stated that *Grady III*'s analysis "has no bearing on cases where lifetime SBM is imposed on . . . adult-child offenders," ¶ 23 n.5, and placed particular emphasis on the geographic restrictions imposed by the sex offender registration program, *id.* ¶ 31. Many of those restrictions cited by *Hilton* are

---

[2] Defendant, unlike the aggravated offenders addressed in *Strudwick* and *Hilton*, is not subject lifetime sex offender registration; instead, he must register for thirty years with an opportunity to petition for removal after ten years. N.C. Gen. Stat. § 14-208.6A (2021). However, because this registration period neatly mirrors the current terms of Defendant's enrollment in SBM for thirty years (with an ability to reduce the term to ten years by petitioning the trial court), this is ultimately a distinction without a difference.

particularly focused on children. *See* N.C. Gen. Stat. §§ 14-208.18(a)(1)-(2) (2021) (prohibiting registered sex offenders from "the premises of any place primarily for the use, care, or supervision of minors" and 300 feet of same if located on premises "not intended primarily" for that use); *id.* §§ 14-208.16(a)(1)-(2) (prohibiting a sex offender registrant from knowingly residing at any location or structure "within 1,000 feet of any property line of a property on which any public or nonpublic school or child care center is located"). Given that (1) Defendant's liberty and privacy interests are limited for the protection of children particularly, and (2) Defendant was convicted of sexually abusing a minor, we hold that his privacy rights are appreciably diminished for purposes of analyzing SBM's reasonableness. *Cf. Hilton*, ¶ 19 (noting that the State's SBM program was enacted to "protect[] the public—especially children").

### 3. *Intrusiveness of SBM*

¶ 22        The third and final factor we must consider is the degree of SBM's intrusion into Defendant's privacy interests. *Id.* ¶ 32. As with the other factors, our holding in *Griffin II* looked almost exclusively to *Grady III* in weighing this factor against a conclusion of reasonableness. 270 N.C. App. at 108, 840 S.E.2d at 274-75. Now, with the benefit of *Hilton*'s and *Strudwick*'s latest analyses of this issue and the General Assembly's amendments to the SBM regime, we hold that Defendant's thirty-year term of SBM works a relatively lesser intrusion than previously discussed in *Griffin II.*

¶ 23 *Hilton* and *Strudwick* are the most recent precedents describing the intrusiveness of SBM and, as Defendant acknowledges, they "appear[] far less concerned than the *Grady III* Court with the intrusiveness of SBM." *Hilton* emphasized the distinction between SBM and other, more intrusive penalties available to the State. *Hilton*, ¶¶ 33-35. It further deemed the practical limitations of SBM—like the weight, size, and charging requirements of the monitoring device— "more inconvenient than intrusive." *Id.* ¶ 32. *Strudwick*, for its part, emphasized the limited purposes for which the location data collected may be used, *Strudwick*, ¶ 23, and observed that there are several procedural mechanisms, including those contained in the General Assembly's recent revisions to the SBM statutes, that allow for judicial review after SBM is imposed, *id.* ¶ 24. *See also Hilton*, ¶ 34. Thus, in both *Hilton* and *Strudwick*, our Supreme Court determined that SBM "constitutes a pervasive but tempered intrusion." *Strudwick*, ¶ 25 (citing *Hilton*, ¶ 35).[3]

¶ 24 The record evidence in this case demonstrates that the physical device Defendant must wear under the SBM order is physically similar to that analyzed in *Hilton* and *Strudwick*; thus, it is "more inconvenient than intrusive" from a practical

---

[3] Defendant argues that neither *Hilton* nor *Strudwick* should guide our analysis on the basis that they purportedly failed to consider the scope of locational data captured and the intrusion into Defendant's home. We rejected this same argument in *Anthony*, concluding that *Hilton* and *Strudwick* fully considered those facts in analyzing the privacy interests at stake. *Anthony*, ¶¶ 41-44. We decline to adopt Defendant's reading of *Hilton* and *Strudwick* in light of our analysis in *Anthony*.

perspective. *Hilton*, ¶ 32. As for the nature of the data collected, it is the same as that held to be "pervasive but tempered" in *Strudwick*. *Strudwick*, ¶ 25. Defendant also has the new benefit of the legislative changes to SBM that post-date *Grady III* and *Griffin II*; Defendant may petition the trial court to modify or terminate his enrollment, N.C. Gen. Stat. § 14-208.46(a), and the trial court must cap his term of SBM at ten years. *Anthony*, ¶ 19. These considerations, together with the mitigating fact that Defendant's unmodified SBM enrollment is for a term of years rather than life, *Griffin II*, 270 N.C. App. at 108, 840 S.E.2d at 275, leads us to hold that the intrusion into Defendant's diminished privacy interests is not so severe as to render it constitutionally unreasonable.

### *4. SBM's Reasonableness under the Totality of the Circumstances*

The State has legitimate and demonstrated interests in protecting the public and children by preventing future sex crimes and solving those that do occur. *Strudwick*, ¶ 26; *Hilton*, ¶ 25. That interest is not outweighed in this case by SBM's intrusion into Defendant's diminished privacy expectations as an adult-child offender. As such, under the totality of the circumstances, we hold that the SBM order entered by the trial court is reasonable for purposes of the Fourth Amendment.

## III. <u>CONCLUSION</u>

Following our Supreme Court's most recent precedents in *Hilton* and *Strudwick* and based on recent legislative amendments effectively shortening

Defendant's participation in SBM to ten years, we cannot agree with Defendant's argument that, considering the totality of the circumstances, his constitutional rights have been violated. We affirm the trial court's SBM order as a result.

AFFIRMED.

Judges CARPENTER and GORE concur.